1  KATIE TOWNSEND (SBN 254321)
2  ktownsend@rcfp.org
   REPORTERS COMMITTEE FOR
3  FREEDOM OF THE PRESS
   1156 15th Street NW, Suite 1020
4  Washington, D.C. 20005
5  Telephone: (202) 795-9300
   Facsimile: (202) 795-9310
6

7  *Counsel for Applicants Forbes*
8  *Media LLC and Thomas Brewster*

9

10                    UNITED STATES DISTRICT COURT
11                  NORTHERN DISTRICT OF CALIFORNIA
12

13  **IN RE APPLICATION OF FORBES**          Misc. Case No. 21-80017
    **MEDIA LLC AND THOMAS**
14  **BREWSTER TO UNSEAL COURT**             Related to CR1690391 MISC EDL
15  **RECORDS**
                                             **MEMORANDUM OF POINTS AND**
16                                           **AUTHORITIES IN SUPPORT OF**
                                             **APPLICATION TO UNSEAL**
17                                           **COURT RECORDS**

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................ ii

INTRODUCTION .........................................................................................1

FACTUAL BACKGROUND .............................................................................2

ARGUMENT ..............................................................................................5

I.    The public has a strong interest in access to the sealed AWA Materials............5

II.   The public has a common-law and constitutional right to access the AWA Materials...............................................................................................7

    A.  The public has a common-law right of access to the AWA Materials..........8

    B.  The public has a constitutional right of access to the AWA Materials. ......10

III.  The public's rights of access can be overcome only on a compelling showing that the government cannot make in this case...................................................15

CONCLUSION .........................................................................................17

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Carpenter v. United States*, 138 S. Ct. 2206 (2018)........................................................7

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ...............................6

*Doe Co. v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ...................................11, 13, 14

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996)..........................9

*Foltz v. State Farm Mutual Auto. Insurance Co.*, 331 F.3d 1122 (9th Cir. 2003) ..8, 10

*FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987)...............................6

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ..............................13

*In re Copley Press*, *Inc.*, 518 F.3d 1022 (9th Cir. 2008) .......................................11, 16

*In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121 (D.C. Cir. 2020) ......................................................................9, 11, 14

*In re Motion to Compel Facebook to Provide Technical Assistance*, 357 F. Supp. 3d 1041 (E.D. Cal. 2019) ..........................................................................................15

*In re N.Y. Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008)..................................12, 16

*In re One Gray and Black Colored Apple iPhone*, No. 1:16-mj-02007 (D. Mass. Apr. 8, 2016) .......................................................................................................14, 17

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876 (S.D. Tex. 2008)....................................................................................................9

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) .....................................................................................................13

*In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, No. ED 15-0451M, 2016 WL 618401 (C.D. Cal. Feb. 16, 2016) ..................................2

*Index Newspapers*, 766 F.3d at 1086..............................................................15

*Kamakana v. City of Honolulu*, 447 F.3d 1172 (9th Cir. 2006)....................8, 9, 10, 15

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ..........................................12

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)..........................................8

*Press-Enter. Co. v. Superior Court*, 464 U.S. 501 (1984) ( ..........................................5

*Press-Enter. Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") ...8, 10, 15

*Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555 (1980) ..................................5, 6

*Riley v. California*, 573 U.S. 373 (2014)..............................................................7

*Seattle Times Co. v. U.S. Dist. Court*, 845 F.2d 1513 (9th Cir. 1988) .......................11

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) .......................................................6

*Smith v. U.S. District Court*, 956 F.2d 647 (7th Cir. 1992)........................................6

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) ..........................8

*Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562 (7th Cir. 2000)...............................11

*United States v. Appelbaum*, 707 F.3d 283 (4th Cir. 2013)......................................10

*United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) ............................................6

*United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188 (9th Cir. 2011) ..........8, 12, 15, 16

*United States v. Doe*, 870 F.3d 991 (9th Cir. 2017) ..............................................16

*United States v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014) .........5, 11, 17

*United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012) .....................................13

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977) ..........................................2, 4

*United States v. Ressam*, 221 F. Supp. 2d 1252 (W.D. Wash. 2002)...................11, 12

**Statutes**

28 U.S.C. § 1651 ..................................................................................1, 2

Judiciary Act of 1789, ch. 20, 1 Stat. 73 ...........................................................2

**Other Authorities**

3 Edward Coke, Reports (London, E. & R. Nutt & R. Gosling 1738) (1602) ............11

Alan Z. Rozenshtein, *Surveillance Intermediaries*, 70 Stan L. Rev. 99 (2018)...........3

*Amicus Briefs in Support of Apple*, Apple (Mar. 2, 2016), https://perma.cc/PL6K-S6WZ .................................................................................................2

Jack Nicas & Katie Benner, *F.B.I. Asks Apple to Help Unlock Two iPhones*, N.Y. Times (Jan. 7, 2020), https://perma.cc/HBM2-TRVZ ...............................................3

Janus Rose, *Apple's Next Encryption Battle is Likely Playing Out in Secret in a Boston Court*, Vice (Mar. 31, 2016), https://perma.cc/X7UA-D9YV ....................14

Justin Wm. Moyer, *FBI Director Makes Personal, Passionate Plea on Apple-San Bernardino Controversy*, Wash. Post (Feb. 22, 2016), https://perma.cc/J29X-S8X3 .................................................................................................13

Note, *Cooperation or Resistance?: The Role of Tech Companies in Government Surveillance*, 131 Harv. L. Rev. 1722 (2018) ...........................................................3

Samuel I. Ferenc, Note, *Clear Rights and Worthy Claimants: Judicial Intervention in Administrative Action Under the All Writs Act*, 118 Colum. L. Rev. 127 (2018) ...10

Thomas Brewster, *The FBI Is Secretly Using a $2 Billion Travel Company as a Global Surveillance Tool*, Forbes (July 16, 2020), https://perma.cc/R96R-AXL9 ..1, 3, 4, 16

# INTRODUCTION

Applicants Forbes Media LLC ("Forbes") and its Associate Editor Thomas Brewster ("Brewster) seek access to certain sealed court records relating to an order under the All Writs Act, 28 U.S.C. § 1651, that required Sabre, a travel technology firm, to assist the United States government in effectuating an arrest warrant (hereinafter, the "AWA Order").  Applicants are informed and believe that the order was issued by the district court in 2016 in case number CR1690391 MISC EDL.  *See* Ex. 1 at 4.  Applicants respectfully request that the Court unseal the AWA Order; the government's application for the AWA Order and any supporting documents, including affidavits; and any other court records relating to the AWA Order, including, but not limited to, any motions to seal, the docket in case number CR1690391 MISC EDL, and all docket entries (collectively, the "AWA Materials").

The government's use of the All Writs Act to obtain judicial orders requiring private technology firms, in general, and Sabre, in particular, to provide technical assistance to the government is a matter of intense public interest, as well as a subject of Applicants' reporting.  *See, e.g.,* Thomas Brewster, *The FBI Is Secretly Using a $2 Billion Travel Company as a Global Surveillance Tool*, Forbes (July 16, 2020), https://perma.cc/R96R-AXL9.  Unsealing the AWA Materials will shed light on the scope of the government's authority to compel such assistance, provide valuable insight into Sabre's role in monitoring travelers on behalf of law enforcement, and inform the press and public about the extent of their privacy when travelling.

## FACTUAL BACKGROUND

**I.    The government's use of the All Writs Act to obtain technical assistance from private technology companies is a matter of intense public interest.**

Originally adopted in connection with the Judiciary Act of 1789, *see* Judiciary Act of 1789, ch. 20, §§ 13–14, 1 Stat. 73, 80–82, the All Writs Act in its current form authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages principles of law," 28 U.S.C. § 1651.  Though the All Writs Act may be used to issue orders for a range of procedural purposes, All Writs Act orders requiring private technology firms to provide the United States government with "technical assistance" are of particular public interest.  *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 171 (1977).  In perhaps the highest-profile example, the government in 2016 sought an order under the Act that would have required Apple to provide a means of bypassing security measures on an iPhone that belonged to one of the shooters in the San Bernardino terrorist attack.  *See In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, No. ED 15-0451M, 2016 WL 618401, at \*1 (C.D. Cal. Feb. 16, 2016).  Before it was mooted, that litigation sparked a wide-ranging public debate on the wisdom and legality of such technical assistance orders.  *See, e.g.*, *Amicus Briefs in Support of Apple*, Apple (Mar. 2, 2016), https://perma.cc/PL6K-S6WZ (collecting court filings and public statements opposing the requested order).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO UNSEAL COURT RECORDS**

The underlying legal and public policy questions raised by the San Bernardino litigation remain unresolved.  *See, e.g.*, Jack Nicas & Katie Benner, *F.B.I. Asks Apple to Help Unlock Two iPhones*, N.Y. Times (Jan. 7, 2020), https://perma.cc/HBM2-TRVZ (describing a new FBI push to require access to encrypted devices).  As a result, the national conversation about the appropriate scope of such compelled assistance continues unabated.  *Compare, e.g.*, Alan Z. Rozenshtein, *Surveillance Intermediaries*, 70 Stan L. Rev. 99, 176–177 (2018) (arguing that private firms' resistance to technical-assistance orders undermines self-government), *with* Note, *Cooperation or Resistance?: The Role of Tech Companies in Government Surveillance*, 131 Harv. L. Rev. 1722, 1724 (2018) (arguing that the picture is "more complicated" and that firms play an important role in checking the government).

## II. The government has used the All Writs Act to obtain orders requiring Sabre to provide real-time intelligence about travelers' activities.

As Applicants' have reported, circumventing encryption is not the only context in which the All Writs Act has been invoked to compel private companies to assist federal government surveillance efforts.  *See* Brewster, *supra*.  According to court records unsealed in the Southern District of California in February 2020, the government has used the Act to require Sabre, a leading travel technology company, to engage in "real-time" monitoring of travelers who are the subject of an active arrest warrant for the government.  *See* Unsealed Application at 4.  Sabre is one of the three largest players in its market, responsible for more than one-third of global air

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO UNSEAL COURT RECORDS**

travel bookings.  *See* Brewster, *supra*.  As a result, it has a staggering volume and diversity of records , including "itineraries, fares, reservations, connecting flights and ticket costs," as well as "crew schedules and other logistical information."  *Id.*

Pursuant to the All Writs Act, the government has sought orders requiring Sabre "to provide representatives of the FBI complete and contemporaneous 'real time' account activity information" on targeted travelers—what the government has described as a "hot watch."  Unsealed Application at 2, 4.  As Applicants reported, Marc Zwillinger—one of Apple's attorneys in the San Bernardino matter—described that request as "unusual and excessive" inasmuch as routine reliance on such orders would make Sabre a de facto "agent" of law enforcement.  Brewster, *supra*.  He expressed doubts, too, whether the application adequately established that the order was necessary and not unreasonably burdensome.  *See id*; *New York Tel. Co.*, 434 U.S. at 171–75 (discussing limits on technical-assistance orders under the All Writs Act, including the extent of the burden to be imposed).

## III.    The sealed AWA Materials in this District concern a similar AWA Order to Sabre.

In support of its application in the Southern District of California, the government identified several other instances in which it had asked for—and obtained—orders under the All Writs Act imposing similar surveillance obligations on Sabre.  *See* Unsealed Application at 4.  One of them, identified in the application as AWA order CR1690391 MISC EDL, was issued by this Court in 2016.  *Id.*  The

government's application adverted that that matter was under seal at the time.  *Id.*

Applicants are informed and believe that the matter is still under seal.

## ARGUMENT

**I.    The public has a strong interest in access to the sealed AWA Materials.**

Openness is "an indispensable attribute" of our judicial system.  *Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555, 569 (1980).  It guards against unfairness and inequity in the application of the law, as "the sure knowledge that *anyone*" may monitor the operation of the courts "gives assurance that established procedures are being followed and that deviations will become known."  *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*") (italics original).  Just as importantly, "public disclosure of judicial records often enhances the public's trust in the process."  *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1088 (9th Cir. 2014).  "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."  *Richmond Newspapers*, 448 U.S. at 572.  As a result, "[s]ecret proceedings are the exception rather than the rule in our courts."  *Index Newspapers*, 766 F.3d at 1084.

The news media plays a vital role in facilitating public oversight of the judicial system.  As the Supreme Court has recognized, "[a] responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the

criminal field." *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).  Members of the media function as "surrogates for the public" by, for instance, attending proceedings, reviewing court filings, and reporting on the business of the judiciary.  *Richmond Newspapers*, 448 U.S. at 573.  And it is well-settled, to that end, that the public and press have a right of access to court documents that arises from the public's interest in observing the consideration and disposition of matters by federal courts.  *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) ("*Planet I*").

The public's right of access is especially powerful in matters, like this one, that concern actions taken by the executive.  As the Seventh Circuit has explained, "in such circumstances, the public's right to know what the executive is about coalesces with the right of the citizenry to appraise the judicial branch."  *Smith v. U.S. District Court*, 956 F.2d 647, 650 (7th Cir. 1992) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).  The principle that "courts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of circumstances" has special force, then, where "a judicial decision accedes to the requests of a coordinate branch, lest ignorance of the basis for the decision cause the public to doubt" the judiciary's independence.  *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008).

Unsealing the AWA Materials at issue will ensure that actions of both the executive and judicial branches are open to public scrutiny, and will help inform the

active, ongoing public debate over the government's use of the All Writs Act to compel private technology companies to provide technical assistance.

The sealed AWA Materials sought by Applicants here are of particular public interest in light of the weighty constitutional and policy interests implicated by location tracking.  As the Supreme Court recently reaffirmed, "location records 'hold for many Americans the privacies of life.'"  *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (quoting *Riley v. California*, 573 U.S. 373, 403 (2014)).  Their disclosure to the government can burden a broad range of First and Fourth Amendment values, including reporter-source confidentiality.  *See generally* Br. Amici Curiae of the Reporters Committee for Freedom of the Press and 19 Media Organizations in Support of Petitioner, *Carpenter*, 138 S. Ct. 2206.  And the Court has, in that vein, shown "special solicitude for location information" even when those location records are held by a third-party, such as Sabre.  *Carpenter*, 138 S. Ct. at 2219.  For this reason too, the press and public have a keen interest in understanding the government's basis for seeking an AWA Order directing Sabre to provide it with contemporaneous—or "real-time"—travel information about a targeted individual or individuals, and the district court's basis for issuing that AWA Order.

## II.  The public has a common-law and constitutional right to access the AWA Materials.

"The law recognizes two qualified rights of access to judicial proceedings and records, a common law right 'to inspect and copy public records and documents,

including judicial records and documents,' and a 'First Amendment right of access to criminal proceedings' and documents therein." *United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1192 (9th Cir. 2011) (first quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), then quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*")).  Under either framework, the press and public have a presumptive right of access to the materials at issue here.

### A.  The public has a common-law right of access to the AWA Materials.

The press and public have a common-law right to access the AWA Materials, which are unquestionably "judicial records." *Custer Battlefield Museum*, 658 F.3d at 1193 (quoting *Nixon*, 435 U.S. at 597).  "[A] 'strong presumption in favor of access'" to such documents "is the starting point" of the common-law analysis. *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mutual Auto. Insurance Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  Only a "narrow range . . . is not subject to the right of public access at all," and then only if such records have 'traditionally been kept secret for important policy reasons.'" *Id.* (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)).  And the Ninth Circuit has stressed that the mere fact that documents "may roughly fall into the category of law enforcement materials" is not enough to justify concluding that right of access does not attach, even if given "documents are usually

or often deemed confidential" after weighing the relevant interests.  *Id.* at 1185; *see*

*also infra* Part III (discussing the compelling showing the government must make to

overcome the presumptive right of access with respect to any specific court record).

All of the AWA Materials at issue here are judicial records to which the

common-law presumption of public access applies.  Indeed, the AWA Materials are

in, as one court put it, the "top drawer of judicial records[,]" which contains

"documents authored or generated by the court in discharging its public duties,

including opinions, orders, judgment, [and] docket sheets"—a drawer that is "hardly

ever closed to the public."  *In re Sealing and Non-Disclosure of Pen/Trap/2703(d)*

*Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008).  Certainly "[t]here is no doubt

that the court orders themselves are judicial records," since "[c]ourt decisions are the

'quintessential business of the public's institutions.'"  *In re Leopold to Unseal*

*Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1128 (D.C.

Cir. 2020) (quoting *EEOC v. Nat'l Children's Ctr.*, *Inc.*, 98 F.3d 1406, 1409 (D.C.

Cir. 1996)).  So, too, are the court's docket sheets reflecting those orders.  *See, e.g.*,

*id.* at 1129.

The same is true of the government's applications requesting such orders, and

any supporting documents.  An application for a judicial order to a third-party under

the All Writs Act is analytically no different than any other motion, petition, or

application seeking court-ordered relief.  The Act is routinely invoked in open court,

in that vein, to request a range of common-law writs and several varieties of equitable relief that determine the obligations of third parties.  *See* Samuel I. Ferenc, Note, *Clear Rights and Worthy Claimants: Judicial Intervention in Administrative Action Under the All Writs Act*, 118 Colum. L. Rev. 127, 139–141 (2018) (collecting contexts).  Such materials, "filed with the objective of obtaining judicial action or relief," are quintessentially judicial records.  *United States v. Appelbaum*, 707 F.3d 283, 295 (4th Cir. 2013); *see also Kamakana*, 447 F.3d at 1179 (emphasizing the strength of the public's interest in motions that, like a motion for summary judgment, ask the court to "adjudicate[] substantive rights" (quoting *Foltz*, 331 F.3d at1135–36).

## B.  The public has a constitutional right of access to the AWA Materials.

In addition to a presumptive common-law right to inspect the AWA Materials, the public also has a constitutional right of access to those judicial records.  In determining whether the First Amendment affords a right of access to a document at any particular stage in a judicial process, courts look to the complimentary considerations of "experience and logic" — that is, "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question."  *Press-Enterprise II*, 478 U.S. at 8, 9.  As the Ninth Circuit has explained, "[w]here access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows."  *In re Copley Press*, *Inc.*, 518 F.3d 1022,

1026 n.2 (9th Cir. 2008).  But "even without an 'unbroken history of public access,'

the First Amendment right exists if 'public scrutiny' would 'benefit' the

proceedings."  *Id.* (quoting *Seattle Times Co. v. U.S. Dist. Court*, 845 F.2d 1513,

1516–17 (9th Cir. 1988)).  Applying those principles here, the First Amendment right

attaches to the AWA Materials.

> 1.  <u>*The public has a constitutional right of access to the AWA Order.*</u>

As to the AWA Order itself, "it should go without saying that the judge's

opinions and orders belong in the public domain."  *Union Oil Co. of Cal. v. Leavell*,

220 F.3d 562, 568 (7th Cir. 2000); *see also United States v. Ressam*, 221 F. Supp. 2d

1252, 1262 (W.D. Wash. 2002) (emphasizing the "venerable tradition of public

access to court orders").  As the D.C. Circuit recently observed, "since at least the

time of Edward III, judicial decisions have been held open for public inspection."  *In

re Leopold*, 964 F.3d at 1128 (citing 3 Edward Coke, Reports, at iii-v (London, E. &

R. Nutt & R. Gosling 1738) (1602)).  Logic informs that history, since "[w]ithout

access to judicial opinions, public oversight of the courts, including the processes and

the outcomes they produce, would be impossible."  *Doe Co. v. Pub. Citizen*, 749 F.3d

246, 267 (4th Cir. 2014).

Applying this principle, the Ninth Circuit has found a First Amendment right

of access to a variety of miscellaneous orders, *see Index Newspapers*, 766 F.3d at

1093 (contempt order); *In re Copley Press*, 518 F.3d at 1026 (order granting motion

to seal), as have other district courts within the Ninth Circuit, *see, e.g.*, *Ressam*, 221 F. Supp. 2d at 1262 (protective order).  And, particularly in the context of warrants and other judicial records related to criminal investigations, access to court orders plays the critical role of assuring the public "that judges are not merely serving as a rubber stamp for the police."  *Custer Battlefield Museum*, 658 F.3d at 1194 (quoting *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008)).  So too here.  While the Ninth Circuit has yet to squarely resolve how the "experience and logic framework" applies to All Writs Act orders in particular, there is no reason to exempt such orders from the usual presumption of "public access to court orders."  *Ressam*, 221 F. Supp. 2d at 1262.

2. <u>*The public has a constitutional right of access to the application and supporting materials.*</u>

The public also has a First Amendment right of access to the government's application and any supporting materials.  The Ninth Circuit has not resolved how the "experience and logic" framework applies to applications under the All Writs Act, but as discussed *supra* Part II.A, such applications play the same role in the adjudicatory process that other, presumptively accessible motions for court-ordered relief do.  Many of the forms of relief authorized by the Act have traditionally been sought in open court; the propriety of any particular writ of mandamus, for instance, is plainly the kind of question that has long been litigated in public.  *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 137 (1803).  Logic points in the same direction:

"The public has an interest in learning . . . the evidence and records" that underpin a court order determining the legal obligations of a third-party, or else the public cannot judge for itself whether the court's order has a valid basis. *Pub. Citizen*, 749 F.3d at 267. The government has already implicitly recognized as much in the All Writs Act context. The Justice Department favored litigating the validity of its technical assistance request to Apple in public view on the theory that the public, if fully apprised of the government's reasons for seeking such an order, would be more likely to believe that the government was justified in applying to the court for such novel relief. *Cf.* Justin Wm. Moyer, *FBI Director Makes Personal, Passionate Plea on Apple-San Bernardino Controversy*, Wash. Post (Feb. 22, 2016), https://perma.cc/J29X-S8X3.

  3. *The public has a constitutional right of access to the docket sheet in CR1690391 MISC EDL.*

Finally, the public and press have a First Amendment right of access to the docket sheet reflecting the AWA Materials filed with the Court. There is a "centuries-long history of public access to dockets." *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012). And a number of federal appellate courts have recognized a First Amendment right of access to docket sheets, *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004); *Pub. Citizen*, 749 F.3d at 268, including in the context of investigative materials, *see In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988).

To hold otherwise would make nonsense of the right of access, since without a docket that gives notice of the existence of an application or order, the public would have no opportunity to oppose "closure of a document or proceeding that is itself a secret." *Pub. Citizen*, 749 F.3d at 268.  Applicants' ability to assert their rights in this very case, for instance, is grounded in the fortuity that the existence of the AWA Order was referenced in an entirely different public document.  The same dynamic unfolded in the case of an All Writs Act application and order unsealed in the District of Massachusetts in 2016:  The ACLU was able to assert its right of access only because the order's existence was referenced in a public search warrant affidavit.  *See* Janus Rose, *Apple's Next Encryption Battle is Likely Playing Out in Secret in a Boston Court*, Vice (Mar. 31, 2016), https://perma.cc/X7UA-D9YV.  The government in that case promptly conceded that there was no continued need to seal the application and order.  *See* Motion to Unseal, *In re One Gray and Black Colored Apple iPhone*, No. 1:16-mj-02007 (D. Mass. Apr. 8, 2016).  If not for that affidavit's reference to the existence of the matter, then, a docket that could no longer constitutionally remain sealed would nevertheless have remained sealed indefinitely.

At heart, as the D.C. Circuit explained in articulating the common-law right of access to certain electronic surveillance orders, "[i]t would make little sense to provide public access to court documents but not to the indices that record them and thus make them accessible." *In re Leopold*, 964 F.3d at 1129.  The right of access is

a dead letter absent "a meaningful ability for the public to find and access those documents" to which the right attaches.  *Index Newspapers*, 766 F.3d at 1086. Experience and logic therefore dictate that the press and public have a right of access to the docket sheet in CR1690391 MISC EDL.

## III.     The public's rights of access can be overcome only on a compelling showing that the government cannot make in this case.

The rights of access at issue here are weighty.  Where the First Amendment right attaches, records can be sealed only if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Press-Enterprise II*, 478 U.S. at 13–14 (quoting *Press-Enterprise I*, 464 U.S. at 510).  Where the common-law right applies, "a 'strong presumption in favor of access is the starting point,'" and "[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by . . . 'articulat[ing] compelling reasons' . . . that outweigh the general history of access and the public policies favoring disclosure."  *Custer Battlefield Museum*, 658 F.3d at 1194–95 (quoting *Kamakana*, 447 F.3d at 1178–79) (alteration in original). No such showing can be made here.

This is not, for instance, a case in which the government can claim an interest in preserving "the secrecy of law enforcement techniques."  *In re Motion to Compel Facebook to Provide Technical Assistance*, 357 F. Supp. 3d 1041, 1044 (E.D. Cal. 2019).  The fact that Sabre engages in "hot-watch" monitoring of travelers on behalf

of the government is already public.  *See* Brewster, *supra*.  Moreover, the existence of the particular AWA Order at issue—which dates back to 2016—also is already public.  *Id.*  And, to the extent the AWA Materials contain information that the government nevertheless can demonstrate it has a compelling or countervailing interest in maintaining under seal, the Court "can accommodate those concerns by redacting sensitive information rather than refusing to unseal the materials entirely." *Custer Battlefield Museum*, 658 F.3d at 1195 n.5.

Those conclusions are fortified by the likelihood that the underlying arrest warrant, which is now four years old, has already been executed.  As the Ninth Circuit has explained in elaborating the common-law right of access, "[p]ost-investigation . . . warrant materials 'have historically been available to the public.'" *Custer Battlefield Museum*, 658 F.3d at 1193 (quoting *In re N.Y. Times Co.*, 585 F. Supp. 2d at 88).  At that stage of a proceeding, the government's secrecy interests are sharply attenuated—the search or arrest has been accomplished—and the balance shifts decisively in favor of the public's interest in "keepi[ng] a watchful eye on the workings of public agencies."  *Id.* at 1194 (internal quotation omitted) (alteration in original).[1]  The same considerations are instructive in weighing the government's

---

[1]     Regardless of the investigation's status, the public has a right of access to related sealing motions and orders, *see In re Copley Press*, 518 F.3d at 1026, if not attachments to those motions, *see United States v. Doe*, 870 F.3d 991, 997 (9th Cir. 2017) (citing *In re Copley Press*, 518 F.3d at 1026–28).  "Logic . . . dictates that the record of these types of proceedings should be open to the public," at least in part,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO UNSEAL COURT RECORDS**

interest—to the extent it can, in fact, demonstrate one—in maintaining the AWA Materials at issue here under seal.  *Cf. In re One Gray and Black Colored Apple iPhone*, No. 1:16-mj-02007 (D. Mass. Apr. 8, 2016) (minute order) (granting the government's motion to unseal All Writs Act materials where corresponding search warrant had already been executed).

## CONCLUSION

For the foregoing reasons, Applicants respectfully request that the Court enter an order unsealing the AWA Materials.

Dated: January 25, 2021

/s/ Katie Townsend

Katie Townsend
REPORTERS COMMITTEE
  FOR FREEDOM OF THE PRESS
1156 15th St. NW, Ste. 1250
Washington, D.C. 20005
Telephone: (202) 795-9303
Email: ktownsend@rcfp.org

*Counsel for Applicants*

---

"because the very issue at hand is whether the public should be excluded or included in various types of judicial proceedings." *Index Newspapers*, 766 F.3d at 1096.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO UNSEAL COURT RECORDS**

1

# CERTIFICATE OF SERVICE

2

3

    I hereby certify that on January 25, 2021, the foregoing document was served

4

at my direction by Certified Mail on the United States Attorney for the Northern

5

District of California at:

6

7
    United States Attorney's Office
    450 Golden Gate Avenue
8
    San Francisco, CA 94102

9
Dated: January 25, 2021                        /s/ Katie Townsend

10                                             Katie Townsend
                                               REPORTERS COMMITTEE
11                                                FOR FREEDOM OF THE PRESS
                                               1156 15th St. NW, Ste. 1020
12                                             Washington, D.C. 20005
                                               Telephone: (202) 795-9303
13                                             Email: ktownsend@rcfp.org

14

15                                             *Counsel for Applicants Forbes*
                                               *Media LLC and Thomas Brewster*
16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION TO UNSEAL
COURT RECORDS**