KATIE TOWNSEND (SBN 254321)
ktownsend@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

*Counsel for Applicants Forbes Media LLC and Thomas Brewster*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE APPLICATION OF FORBES MEDIA LLC AND THOMAS BREWSTER TO UNSEAL COURT RECORDS** | Misc. Case No. 3:21-mc-80017 <br><br> Related to CR1690391 MISC EDL <br><br> **REPLY IN SUPPORT OF APPLICATION TO UNSEAL COURT RECORDS** |

# TABLE OF CONTENTS

I.   The common law right of access applies and is not overcome. ……………4

II.  The constitutional right of access applies and is not overcome. …………..9

III. The Government's request to seal the Application is meritless. …..……..14

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) .................................................................. 13

*Commonwealth v. Fenstermaker*, 530 A.2d 414 (Pa. 1987) ........................................................ 7

*Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092 (9th Cir. 2016) ............ 11

*Dousa v. U.S. Dep't of Homeland Security*, No. 19-cv-1255, 2020 WL 4784763 (S.D. Cal. Aug. 18, 2020).................................................................................................................5, 6

*Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) ....................... 5

*FTC v. Dean Foods*, 384 U.S. 597 (1966) ................................................................... 11

*In re Application for an Order Authorizing the Use of a Pen Register and a Trap and Trace Device*, 396 F. Supp. 2d 294 (E.D.N.Y. 2005) ............................................. 13

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) ............................................. 10

*In re Granick*, 388 F. Supp. 3d 1107 (N.D. Cal. 2019) ............................................ 2, 3

*In re Granick*, No. 16-mc-80206, 2018WL 7569335 (N.D. Cal. Dec. 18, 2018), *aff'd*, 388 F. Supp. 3d 1107 (N.D. Cal. 2019) ................................................................. 1, 5

*In re Installation of a Pen Register or Touch–Tone Decoder & Terminating Trap*, 610 F.2d 1148 (3d Cir. 1979) ......................................................................................... 12

*In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 300 F. Supp. 3d 61 (D.D.C. 2018) ................................................................................ 2

*In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121 (D.C. Cir. 2020) ............................................................................... 2

*In re New York Times Co.*, 585 F. Supp. 2d 83 (D.D.C. 2008) .................................. 14

*In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant* ("*In re Apple*"), No. 1:15-mc-01902, 2015 WL 5920207 (E.D.N.Y. Oct. 9, 2015) ... 8, 13

*Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) .......passim

*Times Mirror Co v. United States*, 873 F.2d 1210 (9th Cir. 1989) .............................. 5

*United States v. Baker*, 868 F.3d 960 (11th 2017) ..................................................... 12

*United States v. Brooklier*, 685 F.2d 1162 (9th Cir. 1982) ........................................ 12

*United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188 (9th Cir. 2011)....................passim

*United States v. Index Newspapers LLC*, 776 F.3d 1072 (9th Cir. 2014)........... 3, 9, 10

*United States v. Loughner*, 769 F. Supp. 2d 1188 (D. Az. 2011) .............................. 13

*United States v. Mountain States Tel. & Telegraph Co.*, 616 F.2d 1122 (9th Cir. 1980) ........................................................................................................................... 11, 12

*United States v. Sealed Search Warrants*, 868 F.3d 385 (5th Cir. 2017) ...................... 5

*Valley Broadcasting Co v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289 (9th Cir. 1986) ........................................................................................................................... 2

**Other Authorities**

All Writs Act Order on Sabre to Give Real Time Updates on Travel of Suspect, DocumentCloud, https://perma.cc/A8EJ-HEZY (last visited Feb. 17, 2021) ........... 4

Jennifer X. Luo, *Decoding Pandora's Box: All Writs Act and Separation of Powers*, 56 Harv. J. Legis. 257 (2019) ............................................................................... 11

*See* Thomas Brewster, *The FBI Is Secretly Using a $2 Billion Travel Company as a Global Surveillance Tool*, Forbes (July 16, 2020), https://perma.cc/R96R-AXL9 ....................................................................................................................…….....4, 14

Forbes Media LLC and Thomas Brewster ("Applicants") hereby submit this reply in support of their application to unseal court records ("Application").

First, the common law presumption of access to judicial records applies to the docket, court orders, and other material under seal in Case No. CR1690391 MISC EDL, and it cannot be overcome by mere generalized assertions of harm to law enforcement interests. There is simply no support for the Government's suggestion that documents filed in All Writs Act ("AWA") proceedings are not judicial records presumptively open to public inspection under the common law. To the contrary, even *In re Granick*, the decision the Government contends is controlling, expressly recognized that the common law presumption applies to AWA materials. No. 16-mc-80206, 2018 WL 7569335, at *11 (N.D. Cal. Dec. 18, 2018), *aff'd*, 388 F. Supp. 3d 1107 (N.D. Cal. 2019) ("As an initial matter, the Court agrees there is a presumptive common law right of access to these materials.") (emphasis omitted). And the *In re Granick* court's ultimate conclusion—that the presumption of access to AWA materials was overcome in that case by the "administrative burden" of the petitioners' request for the unsealing of *every* such document filed in this District over a thirteen-year period—is wholly inapplicable here, where Applicants have moved for the unsealing of a single matter. 388 F. Supp. 3d at 1129.[1] In short, the Government's

---

[1] The supposition that administrative burden can trump the common law right rested, in any event, on a faulty foundation. *In re Granick* substantially relied on a decision of the U.S. District Court for the District of Columbia that is no longer good

1
**REPLY IN SUPPORT OF APPLICATION TO UNSEAL COURT RECORDS**

characterization of *In re Granick* is wrong, and the Government offers no other support for its position that the common law right does not apply.

Because the common law presumption of access applies to the docket and other judicial records in Case No. CR1690391 MISC EDL, the Government must "articulate[] compelling reasons" to justify their continued sealing, *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), and must, in particular, explain why any such compelling concerns cannot be "accommodate[d] . . . by redacting sensitive information rather than" sealing "the materials entirely," *United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011). The Government's failure to meet that burden under the common law—standing alone—requires that the Application be granted.

Second, though this Court need not reach application of the First Amendment right of access, it too applies, and imposes an even more rigorous standard on the Government to justify continued sealing of the AWA materials at issue here. The

---

law. *See id.* at 1127 (citing *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 300 F. Supp. 3d 61, 97–98 (D.D.C. 2018)). The D.C. Circuit, in a thorough opinion by Judge Garland, reversed that decision, soundly rejecting the conclusion that administrative burden can be "dispositive of whether judicial records may be released at all." *See In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1121 (D.C. Cir. 2020). The only contrary authority cited in *In re Granick* is dicta in a case involving a request that *was* "feasible." *Valley Broadcasting Co v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1295 (9th Cir. 1986); *In re Granick*, 300 F. Supp. 3d at 97.

Government—again relying solely on *In re Granick*—maintains that filings in AWA proceedings should be treated like the warrants those proceedings can help effectuate. Yet that argument cannot be squared with the Government's own characterization of the law of this Circuit, which applies the constitutional right of access separately to "*each* category of documents sought," *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014) (emphasis added) (citing *Press-Enter. Co. v. Superior Court*, 478 U.S. 1 (1986)), and separately even to identical documents "at different stages of the same hearing," Gov't's Resp. at 8.

The reason the district court in *In re Granick* did not take that approach is straightforward:  The petitioners themselves had argued that their right to access AWA materials was derivative of their right to access the other materials, including warrant materials, they had requested.  They thus forfeited any argument that AWA materials should be viewed differently.  388 F. Supp. 3d at 1129.  But as Applicants explain in their initial memorandum of points and authorities and in more detail below, technical-assistance proceedings are equivalent (in substance and form) to proceedings seeking other forms of court-ordered relief available under the All Writs Act.  They are not warrant proceedings.  And the Government's argument is akin to contending that all records in a hearing on a mandamus petition should be sealed in full if some fraction of an underlying administrative record is.  That is not the law.

Finally, to be clear, despite the Government's insistence that this matter should be litigated in secret, every piece of information in the Application—including the

Exhibit—is public. The order attached as an Exhibit was, as the Government acknowledges, placed on the public docket in the Southern District of California in mid-February 2020, where it remained until at least March 10, 2020. Brewster Decl., ¶ 2. That July, Applicants published reporting about that order, including a link to a copy. *See* Thomas Brewster, *The FBI Is Secretly Using a $2 Billion Travel Company as a Global Surveillance Tool*, Forbes (July 16, 2020), https://perma.cc/R96R-AXL9; All Writs Act Order on Sabre to Give Real Time Updates on Travel of Suspect, DocumentCloud, https://perma.cc/A8EJ-HEZY (last visited Feb. 17, 2021).[2] That the Government would now ask this Court to seal the Application because it contains information that was placed on a court's public docket a year ago, and that is publicly available on a news organization's website, suggests that the Government gravely misunderstands the standards governing the public's right of access to court records.

It is the Government's burden to demonstrate that the public's common law and constitutional rights of access are overcome with respect to each category of judicial records at issue, and that nothing short of wholesale sealing of the entirety of Case No. CR1690391 MISC EDL is sufficient to address whatever countervailing interests the Government proffers in favor of secrecy. For the reasons herein,

---

[2] As to the Government's objection that the Exhibit contains personally identifying information, Applicants filed the order as it appeared on the public docket in the Southern District of California. If the Court would prefer that Applicants redact from the Exhibit the two pieces of information identified by the Government, Applicants will file a motion to substitute a revised Exhibit. To be clear, however, there is no basis to seal the Exhibit in its entirety.

Applicants respectfully request that the Court grant their Application

### I. The common law right of access applies and is not overcome.

In an effort to evade the "strong presumption in favor of access" that is the "starting point" of the common law analysis, *Kamakana*, 447 F.3d at 1178 (quoting *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)), the Government argues, first, that All Writs Act materials should be treated like grand jury materials and added to a very limited roster of documents to which the common law right has been found not to attach. *See* Gov't's Resp. at 8. But as the Ninth Circuit has made clear, to the extent such a list exists, it is short, exceptional, and effectively closed.[3] Because the consequences of expanding it are "drastic" when compared to the usual approach of asking whether "compelling reasons" for sealing exist, *Kamakana*, 447 F.3d at 1185, the list includes only three entries—and the Ninth Circuit has not added one in nearly a decade, *see Dousa v. U.S. Dep't of Homeland Security*, No. 19-cv-1255, 2020 WL 4784763 at *2 (S.D. Cal. Aug. 18, 2020). Little surprise, then, that the Government offers no support for its assertion that the AWA materials at issue here should be lumped into that "exclusive club," *id.*, and

---

[3]  The Ninth Circuit retreated from the "traditionally kept secret" approach urged by the Government in *Custer Battlefield Museum*, explaining that the pre-indictment, warrant-specific secrecy interests it identified in *Times Mirror Co v. United States*, 873 F.2d 1210, 1215–16 (9th Cir. 1989), can be accommodated when evaluating whether the common law right has been overcome "in a particular case." 658 F.3d at 1194. For that reason, other circuits have declined to follow *Times Mirror*'s approach to determining whether the common law right attaches in the first instance. *See United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017).

5
**REPLY IN SUPPORT OF APPLICATION TO UNSEAL COURT RECORDS (Misc. Case. No. 3:21-mc-80017)**

begrudgingly acknowledges that the only court to address the question reached the opposite conclusion, *see In re Granick*, 2018 WL 7569335, at *11.

The Southern District of California's recent decision in *Dousa* is instructive. In that case, Customs and Border Protection (CBP) sought to seal information that had been publicly docketed for months on the grounds that failing to remove it would "reveal techniques and methods [of information collection], including intelligence collection goals and priorities and the particular geographic and operational areas of focus." 2020 WL 4784763, at *2 (alterations in original) (internal quotation omitted). But as the district court explained, the Ninth Circuit has held that merely demonstrating that information is "law enforcement sensitive" does not suffice to show that it is the kind of information "traditionally kept secret" for purposes of the common law right. *Id.* (quoting *Kamakana*, 447 F.3d at 1184–85). The court therefore considered whether CBP had shown a "compelling reason" for sealing, concluding no such showing was possible where "[t]he unredacted information was publicly accessible for five months before CBP's motion [to seal it], and in that time at least one news organization drew the public's attention to the documents." *Id.* at 3. Moreover, the public, the court stressed, had a legitimate interest in understanding CBPs law enforcement "techniques" because the subject matter of the proceeding concerned whether they had been lawfully deployed. *See id.* at *3.

Here, that CR1690391 MISC EDL is a sealed matter pertaining to an AWA order obtained by the Government in 2016 that required Sabre to assist in effectuating

an arrest warrant, and that Sabre complied with that order, are facts that have been public since last February.  *See* App., Ex. 1 at 4.  It is not enough for the Government to announce, as a general matter, that Applicants seek to unseal "documents in a matter related to ongoing criminal matters" or that it would "damage . . . ongoing investigations" to grant the Application; the Government must demonstrate harm from the unsealing of these specific records and explain why redaction cannot accommodate its concerns.  Gov't's Resp. at 11; *see Kamakana*, 447 F.3d at 1184 (generic references to an ongoing investigation insufficient "without any further elaboration or any specific linkage with the documents").

To Applicants' knowledge, the Government does not represent that the warrant to which the AWA materials at issue pertain—issued approximately five years ago—has not been executed, or that they concern an individual who has not been indicted or taken into custody, even though courts typically consider those factors when determining whether the common law right is overcome as to pre- or post-investigation warrant materials.[4]  Nor does (or could) the Government explain how publicly docketing the matter, subject to appropriate redactions if necessary, could cause *any* harm when the fact that the matter exists, and that it pertains to an order

---

[4]   *See, e.g.*, *Custer Battlefield Museum*, 658 F.3d at 1193–94 (noting that warrant materials are generally unsealed "upon the return of the execution of the warrant or in connection with post-indictment discovery") (internal quotation omitted); *Commonwealth v. Fenstermaker*, 530 A.2d 414, 416 (Pa. 1987) (presumption of access to "affidavits supporting arrest warrants that have already been executed").

effectuating an arrest warrant, is already public.  At base, the Government must demonstrate compelling reasons to think unsealing of these specific AWA materials would cause harm relative to the information that is *already public*, harm that cannot be addressed by the alternative of redaction.  And close scrutiny of the Government's showing is particularly warranted, here, where the public has a strong, legitimate interest in understanding the Government's use of the All Writs Act to obtain technical-assistance orders aimed at third parties like Sabre.

Finally, courts are more than capable of balancing the Government's interest in ensuring that a warrant is successfully executed and the public's right to scrutinize the judicially authorized techniques the Government employs to do so.  Indeed, public dockets are replete with judicial opinions doing just that.  An instructive example is *In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant* ("*In re Apple*"), No. 1:15-mc-01902, 2015 WL 5920207 (E.D.N.Y. Oct. 9, 2015).  There, several months before the San Bernardino attack, the Government requested an AWA order that would have required Apple to break the encryption on one of its devices.  *See* Motion to Compel, *In re Apple*, No. 1:15-mc-01902 (E.D.N.Y. Oct. 8, 2015) (ECF No. 1).  As the court quickly realized, the Government's submission was far too cursory to demonstrate its entitlement to the novel relief it requested.  *See In re Apple*, 2015 WL 5920207, at \*7.  The court ordered further briefing and, in the interim, "direct[ed] the Clerk to file on the public docket" a copy of its order that "ruled on the government's application without

referring to any *specific* information that would compromise a continuing investigation," allowing the public to understand the issues at stake.  Memorandum and Order, *In re Apple*, No. 1:15-mc-01902 (Oct. 9, 2015) (emphasis added).

Here, the Government's own submissions make clear that its claimed need for total secrecy in AWA proceedings sweeps far too broadly.  *Compare Kamakana*, 447 F.3d at 1184 (noting that the government's overbroad proposed redactions reinforced the court's decision to unseal records).  Indeed, as addressed in more detail below, the Government has "urge[d] the Court to file Petitioners' brief under seal" even though it contains only publicly available information, Gov't's Resp. at 4, and it previously filed a motion for extension of time under seal without an adequate basis, *see* Order Unsealing ECF No. 6 and Denying Motion for Extension of Time, *In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records*, No. 21-mc-80017 (N.D. Cal. Feb. 12, 2021) (ECF No. 11).  And throughout, the Government has publicly offered, at most, only generalities to explain its resistance to unsealing any portion of any judicial record in CR1690391 MISC EDL.  Such a showing is insufficient to overcome the common law presumption of access.

## II.     The constitutional right of access applies and is not overcome.

Because the common law analysis in this case is straightforward, the Court need not reach application of the public's First Amendment right of access.  To be clear, however, the Government's application of the First Amendment framework is, like its conception of the common law right, faulty.  The Government's argument is

premised on the notion that All Writs Act proceedings are akin to warrant proceedings—so much so, in fact, that a court order issued under the All Writs Act is more like a warrant than it is like, say, another type of court order issued under the All Writs Act. That framing makes little doctrinal or descriptive sense.

As the Ninth Circuit has explained, and as the Government appears to concede, courts must apply "the experience and logic test to *each* category of documents sought." *Index Newspapers*, 766 F.3d at 1084 (emphasis added); Gov't's Resp. at 8. Thus, the Government's insistence that the analysis as to AWA materials must mirror the analysis applicable to warrants just because AWA materials may be filed in a proceeding "ancillary to" the execution of a warrant is meritless. Gov't's Resp. at 7. Indeed, in *Index Newspapers* itself, the Ninth Circuit applied the *Press-Enterprise II* framework separately to different filings in a contempt hearing "ancillary to a grand jury investigation"; it did not, as the Government's arguments would seemingly require, treat them all as subject to the rule for grand jury secrecy. 766 F.3d at 1093. Simply put, Applicants ask the Court to apply the *Press-Enterprise II* framework to 'court orders,' 'applications,' and 'docket sheets' separately because those are the "categor[ies] of documents sought"[5] and Ninth Circuit law requires it. *Id.* at 1084.[6]

---

[5]  The Government's response does not even mention Applicants' request for access to any sealing motions and orders, even though the Ninth Circuit has already held that a First Amendment right of access attaches to such materials. *See In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008).

The Government's contention that "court orders issued under the All Writs Act" or "motions for relief under the All Writs Act" are less coherent categories for purposes of the *Press-Enterprise II* framework than "filings related in some way to a warrant" is unavailing for other reasons as well.  For one, a technical-assistance order "functions rather like a writ of mandamus" or other forms of relief available under the All Writs Act "in that it compels a party to carry out a specific performance." Jennifer X. Luo, *Decoding Pandora's Box: All Writs Act and Separation of Powers*, 56 Harv. J. Legis. 257, 274 (2019).  That resemblance is hardly a coincidence; a court's jurisdiction to issue technical-assistance orders rests on an analogy to the role of All Writs Act orders in ordinary civil contexts.  As the Ninth Circuit has explained, a technical-assistance order issues "in aid of the court's potential jurisdiction to receive an indictment if significant violations of the law are discovered," just as a court may issue a status-quo-preserving injunction under the All Writs Act "in aid of its potential jurisdiction" in a civil action yet to be filed.  *United States v. Mountain*

---

[6]   Applicants do not argue that the context in which an AWA order is sought is irrelevant to determining whether (and to what extent) the presumption of access is *overcome* in a particular case, only that the kind of document at issue determines whether the presumption *applies* in the first place.  That "the interest in ensuring that judicial records remain open to the public applies with special force to judicial opinions," for instance, is well-settled. *Lipocine Inc v. Clarus Therapeutics*, No. 19-622, 2020 WL 4569473, at *3 (D. Del. Aug. 7, 2020) (collecting cases).  *In re Leopold* is instructive:  There, Judge Garland applied the observation that "judicial decisions have been held open for public inspection" since "at least the time of Edward III" in finding a common law right of access to surveillance orders that, plainly, did not exist during Edward III's reign.  *In re Leopold*, 964 F.3d at 1128.

*States Tel. & Telegraph Co.*, 616 F.2d 1122, 1129 n.7 (9th Cir. 1980) (citing *FTC v. Dean Foods*, 384 U.S. 597 (1966)).  And, indisputably, applications for relief in the form of mandamus or an injunction have historically been litigated in open court.  *Cf. Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1100 (9th Cir. 2016) (recognizing a common law right of access to motions for a preliminary injunction).

Logic reinforces the conclusion that proceedings seeking technical-assistance orders are like other extraordinary-relief proceedings in ways that bear critically on the public's interest in access.  In the warrant context, while the proceeding "adjudicate[s] important constitutional rights," *Custer Battlefield Museum*, 658 F.3d at 1194 (internal quotation omitted), at base the court's role is to determine whether the facts in the application amount to probable cause; constitutional and other objections to the search can be resolved at a subsequent suppression hearing to which the public has a First Amendment right of access.  *See United States v. Brooklier*, 685 F.2d 1162, 1169–71 (9th Cir. 1982).  Even where compelling interests overcome the public's right of access to warrant materials pre-execution, then, the public's entitlement to scrutinize the basis for the search is deferred but not denied.

An All Writs Act hearing, by comparison, is very much the proper forum for a third-party to object to being bound by a technical-assistance order, just as a party is entitled to notice and opportunity to be heard on an opposing party's request for a preliminary injunction.  *See Mountain States*, 616 F.2d at 1133; *In re Installation of a Pen Register or Touch–Tone Decoder & Terminating Trap*, 610 F.2d 1148, 1157 (3d

Cir. 1979). Indeed, it may be the *only* forum for the resolution of those questions because it remains unsettled whether a criminal defendant is entitled to suppression where an All Writs Act order was obtained in violation of the rights of the third-party technology provider. *See United States v. Baker*, 868 F.3d 960, 969–70 & n.4 (11th 2017). If the Government's rule were the law, no judicial opinion resolving the legality of a particular investigative technique judicially authorized under the All Writs Act would ever be published. That has not, thankfully, been the practice of the federal courts. *See, e.g.*, *In re Apple*, 2015 WL 5920207, at *1.

These features of AWA proceedings highlight why this sealed matter is of such public interest. To Applicants' knowledge, no court has ruled on the propriety of the assistance the Government sought from Sabre in a published opinion. *Cf. In re Application for an Order Authorizing the Use of a Pen Register and a Trap and Trace Device*, 396 F. Supp. 2d 294, 326 n.24 (E.D.N.Y. 2005) (noting that the Government asserted the legality of "hotwatch" orders but offered no support for that position). And, to Applicants' knowledge, no court has done so since the Supreme Court affirmed that individuals have a reasonable expectation of privacy in "the whole of their physical movements." *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). The public has an interest in knowing whether difficult legal questions have been fairly raised and, if so, how they have been resolved by the courts.

Finally, even if the Government's analogy to warrant materials was sound, the Government's confidence that there is no constitutional right of access to such

13
**REPLY IN SUPPORT OF APPLICATION TO UNSEAL COURT RECORDS (Misc. Case. No. 3:21-mc-80017)**

materials is misplaced. While the Ninth Circuit has reserved the question, *see Custer Battlefield Museum*, 658 F.3d at 1196–97, the "clear trend" in other jurisdictions is that the public has a constitutional right of access to warrant materials, at a minimum, once the particular investigation has concluded, *United States v. Loughner*, 769 F. Supp. 2d 1188, 1193 (D. Az. 2011); *see also In re New York Times Co.*, 585 F. Supp. 2d 83, 87–90 (D.D.C. 2008). And insofar as the Government fails to overcome the common law presumption, *see supra*, it also falls far short of the more rigorous obligation to show that "total restriction of the [First Amendment] right of access" to CR1690391 MISC EDL is "narrowly tailored" to "compelling interests." *Id.* at 91.

### III.  The Government's request to seal the Application is meritless.

It bears addressing directly the Government's baseless suggestion that Applicants somehow wrongfully obtained the Southern District of California order attached as an exhibit to their Application. The Government represents that the order was "mistakenly unsealed for a brief period in February 2020[,]" suggesting that it was quickly resealed. Gov't's Resp. at 3. This is misleading at best. The order was unsealed on February 14, 2020 and remained available on the public docket until *at least* March 10, 2020, when Mr. Brewster retrieved it via PACER. Brewster Decl., ¶ 2. Mr. Brewster reported on the contents of that order—which states it was "Unsealed by Order of the Court"—in an article published by Forbes in July 2020. *See* Brewster, *supra*. And at all times since it was published, that story has included a link to the order. *See* All Writs Act Order on Sabre to Give Real Time Updates on

Travel of Suspect, DocumentCloud, https://perma.cc/A8EJ-HEZY (last visited Feb. 17, 2021).  While that order no longer appears to be available via PACER, there is nothing on the public docket to indicate that it was resealed or is currently subject to a sealing order, *see* Brewster Decl., Ex. 1.  And, even if it were resealed, there is nothing in the record before this Court to indicate why—or when—that occurred.

Moreover, despite the Government's insistence that the order from the Southern District of California be sealed, none of the interests the Government cites in support of secrecy apply to it.  The Southern District of California matter is publicly docketed.  *See United States v. Kher*, No. 3:19-cr-04643 (S.D. Cal. Feb. 14, 2020) (ECF No. 8) (minute order) (unsealing the indictment).  And the defendant in that case was indicted, arrested, and ultimately entered a guilty plea.  *See* Order Accepting Plea, *United States v. Kher*, No. 3:19-cr-04643 (S.D. Cal. Oct. 13, 2020) (ECF No. 25).  The Government's assertion that continued public access to that order—an order which, to be clear, has been publicly available for a year and reported on by the news media—could harm ongoing investigations is meritless.

## CONCLUSION

For the foregoing reasons, Applicants respectfully request that the Court enter an order unsealing the docket and other judicial records in CR1690391 MISC EDL.

Dated: February 23, 2021

/s/ Katie Townsend
Katie Townsend
REPORTERS COMMITTEE
  FOR FREEDOM OF THE PRESS
1156 15th St. NW, Ste. 1250
Washington, D.C. 20005
Telephone: (202) 795-9303
Email: ktownsend@rcfp.org

*Counsel for Applicants*