1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7  FORBES MEDIA LLC, et al.,                    Case No. 21-mc-80017-TSH

8              Plaintiffs,

9        v.                                     **REPORT AND RECOMMENDATION
                                                TO DENY PETITION; ORDER
10  UNITED STATES OF AMERICA,                   REASSIGNING CASE TO A DISTRICT
                                                JUDGE**
11             Defendant.                       Re: Dkt. Nos. 1, 14

12

13                          **I.    INTRODUCTION**

14        Pending before the Court is Petitioners Thomas Brewster ("Brewster") and Forbes Media

15  LLC's ("Forbes'") (collectively the "Petitioners") Application to Unseal Court Records

16  ("Application" or "Appl.") and a Memorandum of Points and Authorities in Support of the

17  Application ("Appl. Mem."). ECF No. 1. Defendant United States of America (the

18  "Government") filed an Opposition to the Application ("Opp.") (ECF No. 12) with a Statement of

19  Facts submitted separately to the Court under seal. Petitioners filed a Reply ("Reply") (ECF No.

20  13) and a Motion to Unseal the Government's Statement of Facts ("Motion to Unseal"), ECF No.

21  14, which the Government opposes. ECF No. 16. For the reasons stated below, the Court

22  **RECOMMENDS** that the petition be denied and orders the case **REASSIGNED** to a District

23  Judge.

24                          **II.    BACKGROUND**

25        Brewster is a journalist and associate editor for Forbes and covers security, surveillance,

26  and privacy. Declaration of Brewster in Support of Application ("Brewster Decl."), ECF No. 13-

27  1, ¶ 2. He states in his declaration that on March 10, 2020, using PACER, he identified and

28  downloaded from the publicly available electronic docket an Order under the All Writs Act, 28

United States District Court
Northern District of California

1   U.S.C. § 1651 (the "AWA" or the "Act") that was filed in case number 19-cr-4643 in the U.S.

2   District Court for the Southern District of California, though what Petitioners attach to their

3   petition is just the application for an order (the "SDCA Application").  Brewster Decl., ¶ 2; Appl.,

4   Ex. 1.  The SDCA Application referred to a previous order under the AWA, docketed in the

5   Northern District of California in CR-16-90391 MISC EDL, that required Sabre, a travel

6   technology firm, to assist the United States Government in effectuating an arrest warrant

7   (hereinafter, the "AWA Order").  *See* Appl., Ex. 1 at p. 4.

8       Brewster reported on the contents of the SDCA Order in an article titled "The FBI Is

9   Secretly Using a $2 Billion Travel Company as a Global Surveillance Tool," Forbes (July 16,

10   2020), https://perma.cc/R96R-AXL9 ("Brewster Article").  Brewster Decl., ¶ 3.  Petitioners state

11   that the Brewster Article has contained a live link to the SDCA Application since it was published

12   in July 2020.  *Id.*, citing All Writs Act Order on Sabre to Give Real Time Updates on Travel of

13   Suspect, DocumentCloud, https://perma.cc/A8EJ-HEZY (last visited Feb. 17, 2021).  Brewster

14   states that the order no longer appears to be listed on the publicly available docket for case number

15   19-cr-4643.  Brewster Decl., ¶ 4, Ex. 1.

16       The Government states that the SDCA Application and Order were sealed when they were

17   entered, were mistakenly unsealed for a brief period in early 2020, but are currently subject to

18   seal.  Opp., p. 3.  Petitioners apparently retrieved the SDCA Application and Order during the

19   temporary mistaken unsealing.  *Id.*

20       On January 25, 2021, Forbes and Brewster filed this Application to request access to the

21   AWA Order in CR-16-90391 MISC EDL.  *See* Appl.  Specifically, Petitioners have asked the

22   Court to unseal (1) the AWA Order at issue; (2) the Government's application for the AWA Order

23   and any supporting documents; (3) any other court records relating to the AWA Order; and (4) the

24   docket in case number CR-16-90391 and all docket entries (collectively, the "AWA Materials").

25   *Id.*

26       In support of their request, Petitioners assert that "[t]he government's use of the AWA to

27   obtain judicial orders requiring private technology firms in general, and Sabre in particular, to

28   provide technical assistance to the government is a matter of intense public interest, as well as a

subject of Petitioners' reporting." Appl. ¶ 4; Brewster Article. Petitioners state that they, like all members of the public and the press, "have a strong interest in observing and understanding the consideration and disposition of matters by the federal courts," Appl. ¶ 3, and "[t]hat interest is heightened when the action of the Court concerns actions taken by the executive branch." *Id.* Petitioners also state that the public and the press "have a particularly strong interest in access to court records that would shed light on the government's collection of location records, which 'hold for many Americans the privacies of life,'" *id.* ¶ 5, and that "[t]he disclosure of such information to the government implicates a range of weighty constitutional and policy interests, including reporter-source confidentiality." *Id.* As a result, Petitioners assert, "the public and press have a keen interest in understanding the government's basis for seeking an AWA order directing Sabre to provide it with contemporaneous travel information about a targeted individual, as well as the district court's basis for issuing such an order." *Id.*

The Government declines to confirm the existence of the AWA Materials in an unsealed filing because, if they exist, they were considered "worthy of being sealed" by the Court and remain under seal by Court Order. Opp. p. 4. The Government asserts, however, that if any such AWA Materials do exist, they "could have identified one or more persons who were the subjects of an arrest warrant and described actions that the Government wanted take to execute one or more warrants." Opp. p. 5. The Government asserts that, as of the date of its filing on February 16, 2021, its "criminal investigation related to that matter is still ongoing and many of the concerns that originally caused the matter to be sealed persist." *Id.* The Government claims that any *ex parte* AWA proceedings in this case "would have been ancillary to, and in furtherance of, the execution of an arrest warrant that was itself under seal," *id.* at p. 7, and would relate to the Government's efforts to secure a third party's "assistance in the execution of a sealed federal arrest warrant." *Id.* at p. 11.

## III.   LEGAL STANDARD

### A.   The All Writs Act

The AWA authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §

United States District Court
Northern District of California

1651(a).  A federal court may "issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).  "This statute has served since its inclusion, in substance, in the original Judiciary Act as a legislatively approved source of procedural instruments designed to achieve the rational ends of law."  *Id.* (citations and quotation marks omitted).  Indeed, "[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it."  *Id.* at 172-73 (citation and quotation marks omitted).

However, "the power of federal courts to impose duties upon third parties is not without limits; unreasonable burdens may not be imposed."  *Id.* at 172.  As relevant here, the AWA "permits the district court, in aid of a valid warrant, to order a third party to provide nonburdensome technical assistance to law enforcement officers."  *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979).

**B.      Qualified First Amendment and Common-Law Rights of Access to Judicial Records and Proceedings.**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial documents and records."  *Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978).  The law "recognizes two qualified rights of access to judicial proceedings and records, a common law right to inspect and copy public records and documents, including judicial records and documents, and a First Amendment right of access to criminal proceedings and documents therein."  *United States v. Business of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (citations and quotation marks omitted).  "The First Amendment is generally understood to provide a stronger right of access than the common law."  *United States v. Doe*, 870 F.3d 991, 997 (9th Cir. 2017) (citation and quotation marks omitted).

Even so, "there is no right of access which attaches to all judicial proceedings, even all criminal proceedings."  *Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Ariz.*, 156 F.3d 940, 946 (9th Cir. 1998).  Indeed, "the Supreme Court has implicitly recognized that the public

has no right of access to a particular proceeding without first establishing that the benefits of opening the proceedings outweigh the costs to the public." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989).

Amidst the case law finding qualified constitutional and common-law rights of access, however, courts have consistently affirmed that "[e]very court has supervisory power over its own records and files." *Nixon*, 435 U.S. at 598. The Court's fundamental task is "weighing the interests advanced by the parties in light of the public interest and the duty of the courts." *Id.* at 602. Particularly with respect to delineating the common-law right of access, the Supreme Court stressed the fact that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599.

The court has somewhat of a unique role in situations involving criminal justice and access to judicial records: "[t]he investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved." *U.S. Dist. Court for East. Dist. of Mich.*, 407 U.S. at 320-21 ("Nor do we believe prior judicial approval [for warrants] will fracture the secrecy essential to official intelligence gathering"). The Ninth Circuit affirmed that the process of disclosing information to a neutral magistrate to obtain a search warrant "has always been considered an extension of the criminal investigation itself." *Times Mirror Co.,* 873 F.2d at 1214. It follows, then, that "the information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded other aspects of the criminal investigation." *Id.*

## IV.   DISCUSSION

The Court first considers whether the First Amendment gives the public a right to access any of the categories that comprise the AWA Materials. If it does, the Court must then determine whether any such right is overcome by a compelling governmental interest. Finally, the Court considers whether the common law gives the public a right of access separate from the First Amendment and, if so, whether that right is overcome by a compelling governmental interest.

United States District Court
Northern District of California

**A.      First Amendment Right of Access to the AWA Materials**

To determine whether a qualified First Amendment right of access attaches to judicial records, courts apply a two-part "experience and logic" test that considers (1) whether "historical experience counsels in favor of recognizing a qualified First Amendment right of access to the proceeding and (2) whether public access would play a significant positive role in the functioning of the particular process in question." *Times Mirror Co.*, 873 F.2d at 1213 (internal quotation marks omitted).  Generally, "[i]f a proceeding fulfills both parts of the test, a qualified First Amendment right of access arises." *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Arizona*, 156 F.3d 940, 946 (9th Cir. 1998).

**1.      The AWA Application, Supporting Materials, Order, and Records Relating to the Order[1]**

**a.      Experience: No History of Public Right of Access Exists for a Technical-Assistance AWA Application and Order**

The experience prong has been articulated as "whether the place and process have historically been open to the press and general public." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*").  Certain aspects of the judicial system have long been open to the public under the First Amendment,[2] while others have not.  For example, there is no tradition of public access to grand jury proceedings, which "have traditionally been closed to the public and the accused." *Press-Enterprise II*, 478 U.S. at 10.  In fact, the Supreme Court has

---

[1]  For purposes of analysis, the Court has divided the AWA Materials into two categories: (1) the application and supporting documents, order, and court records relating to the order, and (2) the docket sheet.  The former may be grouped together as analogous to warrant materials, the latter in its own category.

[2]  A First Amendment right of access has been found for proceedings such as the trial which has historically "been open to all who care to observe," and at which the presence of the people and representatives of the media has historically been thought to enhance the integrity and quality of what takes place in the courtroom, *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 564 (1980) (plurality), jury selection, which "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system," *Press-Enterprise II*, 478 U.S. at 9, and preliminary hearings in criminal prosecutions.  *Id.* at 10.  The Ninth Circuit has extended the right of public access to in-court sentencing proceedings, *Doe*, 870 F.3d at 997, contempt orders, *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1093 (9th Cir. 2014), and orders granting motions to seal.  *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008).

1    stated that "the proper functioning of our grand jury system depends upon the secrecy of grand

2    jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218

3    (1979).  Similarly, courts have found "no historical tradition of public access to warrant

4    proceedings" during ongoing criminal investigations.  *Times Mirror Co.*, 873 F.2d at 1213; *United

5    States v. U.S. Dist. Court for Eastern Dist. of Mich., S. Div.*, 407 U.S. 297, 321 (1972) ("a warrant

6    application involves no public or adversary proceedings: it is an *ex parte* request before a

7    magistrate or judge.").

8          Because the AWA application, supporting materials and order and records relating to the

9    order were ancillary to, and in furtherance of, the execution of an arrest warrant that was itself

10   under seal, they are not proceedings to which the public has historically had access.  *See In re*

11   *Granick*, 388 F. Supp. 3d 1107, 1129 (N.D. Cal. 2019) ("There is no Ninth Circuit authority

12   recognizing a First Amendment right to access technical assistance orders under the [All Writs

13   Act].").

14         The Ninth Circuit has excluded materials analogous to the AWA Materials that are part of

15   an ongoing criminal investigation from public disclosure under the First Amendment.  In *Times*

16   *Mirror Co.,* a media company sought access to similar categories of documents as those requested

17   here, including search warrants and supporting affidavits, all of which the District Court had

18   ordered kept under indefinite seal while an investigation was ongoing but before an indictment had

19   been returned.  The Ninth Circuit explicitly held that "the First Amendment does not establish a

20   qualified right of access to search warrant proceedings and materials while a pre-indictment

21   investigation is still ongoing." *Times Mirror Co.*, 873 F.2d at 1216.  This holding was based in

22   part on the absence of historical access to warrant proceedings, with the court noting that its

23   "review of the history of the warrant process in this country indicates that the issuance of search

24   warrants has traditionally been carried out in secret" and that "[n]ormally a search warrant is

25   issued after an *ex parte* application by the Government and an *in camera* consideration by a judge

26   or magistrate." *Id.* at 1213-14.  As discussed below, the *Times Mirror* Court also saw no logic in

27   making such procedures public.

28         To be sure, the AWA application, supporting documents, and resulting order and related

United States District Court
Northern District of California

7

records at issue here are not be *the same* as a search warrant, but the AWA Materials were submitted to the Court under seal to obtain a technical assistance order that would enable the Government to execute a warrant in a criminal investigation that is currently ongoing.  In this way, the AWA Materials are similar to – or at least have similar ends as – the materials in *Times Mirror Co.* submitted for an *ex parte* warrant application in a continuing investigation.  The *ex parte* nature of the application and the *in camera* consideration by the court – based on the same necessity for secrecy to avoid alerting the target of the investigation for which the technical assistance order has been sought "lest he destroy or remove evidence" – militate in favor of an analogy of these AWA Materials to the warrant materials discussed in *Times Mirror Co.*, for which no First Amendment right to access attaches.

Hence, in the absence of a recognized First Amendment right to access technical assistance orders under the AWA, and given the history of explicitly precluding access under the First Amendment to warrants in ongoing investigations, to which these AWA Materials may be analogized, the AWA Materials cannot be claimed as "historically [] open to the press and general public."  *Press-Enterprise II*, 478 U.S. at 8.  Accordingly, the historical experience part of the "experience and logic" test has not been satisfied.

> **b.   Logic: Public Access to this Technical-Assistance AWA Application and Order Would Hamper the Execution of the Sealed Federal Arrest Warrant in the Underlying Investigation**

The second part of the two-part "experience and logic" test to determine whether a qualified First Amendment right of access attaches to judicial records considers "whether public access would play a significant positive role in the functioning of the particular process in question."  *Times Mirror Co.*, 873 F.2d at 1213.  As the Ninth Circuit has explained, "[w]here access has traditionally been granted to the public without serious adverse consequences, logic necessarily follows."  *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 n.2 (9th Cir. 2008) (emphasis added).  "[E]ven without an unbroken history of public access, the First Amendment right exists if public scrutiny would benefit the proceedings."  *Id.* (citation omitted).

Nevertheless, the Supreme Court recognized that "[a]lthough many governmental processes best operate under public scrutiny, it takes little imagination to recognize that there are

United States District Court
Northern District of California

United States District Court
Northern District of California

some kinds of Government operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8-9.  Courts have found that logic does not favor public access in circumstances where, as here, disclosure could hinder the Government's ability to pursue the ongoing investigation and prosecution of the underlying crimes.  *See, e.g., Times Mirror Co.*, 873 F.2d at 1214-15.

In addition to the historical secrecy of warrant proceedings, the *Times Mirror* court also found no logic in making such procedures public.  Indeed, the warrant proceeding "is necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." *Franks v. Delaware*, 438 U.S. 154, 169 (1978).  "[I]f the warrant proceeding itself were open to the public, there would be an obvious risk that the subject of a search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed." *Times Mirror Co.*, 873 F.2d at 1215.  Even if such a proceeding "remained closed but the supporting affidavits were made public when the investigation was still ongoing, persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." *Id.*

Similar considerations prompted the court in *In re Granick* to find that the public has no First Amendment right of access to AWA orders that require a third party to provide assistance "in furtherance of an underlying warrant or surveillance order." *In re Granick*, 388 F. Supp. 3d at 1129.  The *Granick* Court enumerated many reasons not to disclose AWA materials: orders are typically issued during covert stages of a criminal investigation and may reveal the status of a covert investigation.  The AWA Materials may contain detailed explanations of why the order is necessary to the criminal investigation and may discuss confidential informants, cooperating witnesses, wiretap investigations, grand jury matters, sensitive law enforcement techniques, and may identify participants, subjects, and targets of an investigation who may either be charged or exonerated and, therefore, need not be publicly disclosed. *Id.*

The Supreme Court has explained why "courts have been reluctant to lift unnecessarily the veil of secrecy from the grand jury." *Douglas Oil Co.*, 441 U.S. at 219.  Among the reasons that also apply to the AWA Materials here are "the risk that those about to be indicted would flee." *Id.*

United States District Court
Northern District of California

1    Similarly, many important purposes are served by keeping under seal search warrant

2    applications and orders – akin to these AWA Materials – in active investigations.  In addition to

3    the experience aspect, in *Times Mirror Co.*, the Ninth Circuit considered how logic could cut in

4    favor of open warrant proceedings, which can be "essential to self-Government" and promote

5    "open discussion of the judicial process," permitting the "public to serve as a check on possible

6    governmental abuses." *Id.* at 1215.  In addition, "public scrutiny of warrant proceedings enhances

7    the quality and safeguards the integrity of the fact-finding process, as is true with public scrutiny

8    of the criminal trial." *Id.* (citation omitted).

9    Nevertheless, the Court stated that, "[w]hile these interests are clearly legitimate, we

10   believe they are more than outweighed by the damage to the criminal investigatory process that

11   could result from open warrant proceedings." *Id.*  The Court went on to state that,

12           In our view, public access would hinder, rather than facilitate, the
             warrant process and the Government's ability to conduct criminal
13           investigations.   In   this   regard,   warrant   proceedings   are
             indistinguishable from grand jury proceedings, which the Supreme
14           Court has identified as the "classic example" of the type of
             "Government operation [ ] that would be totally frustrated if
15           conducted openly ... [since] 'the proper functioning of our grand jury
             system depends upon the secrecy of grand jury proceedings.'"
16

17   *Id.*

18   Petitioners in the case at bar make similar arguments to those the *Times Mirror* court found

19   were outweighed by the potential damage to the criminal investigatory process in general and the

20   facts in this case in particular.  Petitioners contend that the public and the press have "a strong

21   interest in observing and understanding the consideration and disposition of matters by the federal

22   courts," especially when "the action of the Court concerns actions taken by the executive branch"

23   or "would shed light on the Government's collection of location records."  They also argue that, in

24   the context of warrants and other judicial records related to completed criminal investigations,

25   access to court orders plays the critical role of assuring the public "that judges are not merely

26   serving as a rubber stamp for the police." *Custer Battlefield Museum*, 658 F.3d at 1194.

27   In almost a direct rebuttal of these arguments, the *Times Mirror* Court declined to find a

28   First Amendment right of access to warrant materials in the pre-indictment stage because the

10

"incremental value in public access is slight compared to the Government's interest in secrecy at this stage of the investigation." *Times Mirror Co*., 873 F.2d at 1218.  The Court discussed the fact that when, as here, "the integrity and independence of these proceedings are threatened by public disclosures, claims of 'improved self-governance' and 'the promotion of fairness' cannot be used as an incantation to open these proceedings to the public." *Id.* at 1215.  "Nor will the mere recitation of these interests open a particular proceeding merely because it is in some way integral to our criminal justice system." *Id.*  The Court said that although "it is unquestioned that open warrant proceedings might operate as a curb on prosecutorial or judicial misconduct," *id*. at 1217, "whatever the social utility of open warrant proceedings and materials while a pre-indictment investigation is ongoing, we believe it would be outweighed by the substantial burden openness would impose on Government investigations." *Id.*  The warrant process "would be equally threatened if the information disclosed during the proceeding were open to public scrutiny, since in either case disclosure could frustrate the Government's efforts to investigate criminal activity." *Id.*

The AWA proceedings here addressed third-party assistance in the execution of a sealed arrest warrant, but similar concerns would arise if the public gained access to papers generated and filed in such proceedings.  AWA materials will often contain information that identifies the subject of the sealed arrest warrant and reveals the existence of the underlying grand jury investigation and sealed indictment.  The same concerns regarding surveillance and search warrants are obviously present, if not enhanced, for the execution of arrest warrants and the actual apprehension of alleged criminals.  "Openness" here thus would "frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice." *Id*. at 1213.

Here, considerations of "logic" also weigh against a right of access under the First Amendment because public access would not "play[] a particularly significant positive role in" proceedings to secure third-party technical assistance in executing arrest warrants.  *Press-Enterprise II*, 478 U.S. at 9, 11.  Instead, this is precisely the kind of Government investigative technique that would be "totally frustrated if conducted openly."  *See Press-Enterprise II*, 478

U.S. at 9.[3]

Because experience, logic, and case law weigh against a public right of access to the AWA materials in this case, Petitioners have no qualified First Amendment right to access those materials.

### 2.     Docket Sheet

"In general, courts have recognized a qualified First Amendment right of access to docket sheets, explaining that 'docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment.'  The openness of dockets is necessary to 'provide[] effective notice to the public that [a hearing] may occur,' and to allow 'the press and the public to inspect those documents, such as transcripts, that we have held presumptively open.'"  *In re Granick*, 2018 WL 7569335, *11 (N.D. Cal. Dec. 18, 2018) (citing *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93, 94 (2d Cir. 2004)), *report and recommendation adopted* 388 F. Supp. 3d 1107; *see also Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) ("Our skepticism toward wholesale sealing of docket sheets was grounded in the commonsensical observation that most of the information contained on a docket sheet is material that is presumptively open to public inspection.").

Here, however, all of the documents in the underlying criminal matter are under seal, and Petitioners have no right to access them.  "No Ninth Circuit authority addresses the right of public access to docket sheets," *Granick*, 388 F. Supp. 3d at 1130, but in *In re Appelbaum*, the Fourth Circuit denied a challenge to the docketing procedures of § 2703(d) proceedings, explaining:

> [T]here is no First Amendment right of access to § 2703(d)

---

[3]  The Government raises another analogous criminal procedure that guards against the risk that "criminal defendants not yet in custody may elude arrest upon learning of their indictment." *United States v. Balsam*, 203 F.3d 72, 81 (1st Cir. 2000).  Federal Rule of Criminal Procedure 6(e) authorizes a magistrate judge to order the sealing of an indictment "until the defendant is in custody or has been released pending trial."  Fed. R. Crim. P. 6(e)(4).  The same concerns warrant the sealing of ancillary AWA proceedings aimed at effectuating an arrest based on the charges in the underlying sealed indictment.  Conversely, opening documents from such AWA proceedings to public view could prompt the target of the arrest warrant or others in league with him to flee or take other steps to thwart the execution of the warrant.  To the extent that the AWA documents reveal the existence of a sealed indictment, their public release could violate Rule 6(e)'s prohibition on the public disclosure of information that reveals the existence of a sealed indictment "except as necessary to issue or execute a warrant or summons."  Fed. R. Crim. P. 6(e)(4).

United States District Court
Northern District of California

1

2

3

4

> proceedings.  While we agree that the public must ordinarily be given notice and an opportunity to object to sealing of public documents, we have never held, nor has any other federal court determined, that pre-indictment investigative matters such as § 2703(d) orders, pen registers, and wiretaps, which are all akin to grand jury investigations, must be publicly docketed.  We refuse to venture into these uncharted waters, and as such, we refrain from requiring district courts to publicly docket each matter in the § 2703(d) context.

5   707 F.3d 283, 295 (4th Cir. 2013) (internal quotation marks and citations omitted).  Citing this

6   Fourth Circuit decision, *Granick* held that "there is no First Amendment right of public access to

7   docket sheets for sealed . . . AWA materials," *Granick*, 388 F. Supp. 3d at 1130-31.  That holding

8   applies with even more force here, where the investigation remains ongoing.

9        **3.      Compelling Interests Overcome Any Presumptive First Amendment Right of Access and Justify the Continued Sealing of Any AWA Materials**

10

11        Had this Court found a First Amendment right of access to the AWA Materials,

12   compelling interests would have outweighed the presumption.  Even when a First Amendment

13   right of access attaches, "it is not absolute."  *Press-Enterprise II*, 478 U.S. at 9.  When the

14   experience and logic test is satisfied, "the public's First Amendment right of access establishes

15   only a strong presumption of openness, and the public still can be denied access if closure is

16   necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."

17   *Doe*, 870 F.3d at 997 (citation and quotations omitted); *see also Press-Enter. Co. v. Super. Ct.*,

18   464 U.S. 501, 510 (1984) (*Press-Enterprise I*) ("The presumption of openness may be overcome

19   only by an overriding interest based on findings that closure is essential to preserve higher values

20   and is narrowly tailored to serve that interest.") (citation and quotation marks omitted).

21        When a qualified right of access exists and the trial court is confronted with legitimate

22   competing interests, the trial court must carefully balance those interests.  *Phoenix Newspapers,*

23   *Inc.*, 156 F.3d at 949.  The court "must articulate this interest along with findings specific enough

24   that a reviewing court can determine whether the closure order was properly entered."  *Id.* at 946-

25   47 (citation and quotation marks omitted).  The Ninth Circuit amplified this analysis in *Oregonian*

26   *Publishing Co. v. United States Dist. Court*, 920 F.2d 1462 (9th Cir.1990):  beginning with the

27   assumption that "the press and public have a presumed right of access to court proceedings and

28   documents," *id.* at 1465, closure may be predicated only upon the following requirements: "(1)

closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Id.* at 1466.  Furthermore, the court ordering closure "must not base its decision on conclusory assertions alone, but must make specific factual findings." *Id.*

The Court did not find that the AWA Materials at issue here were subject to the First Amendment right of access, but even if it had, there are compelling governmental interests that necessitate nondisclosure of the AWA Materials.  Any presumption of openness would handily be rebutted in this case by the same reasoning undertaken in the discussion above regarding the logic that leads to the conclusion that no constitutional right of access has been established.

The assertion that the AWA Materials relate to an ongoing criminal investigation weighs heavily against the qualified right of public access.  *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) ("The government has demonstrated that restricting public access to these documents is necessitated by a compelling government interest – the on-going investigation.").  Unsealing this type of material could jeopardize the Government's ongoing efforts to investigate and prosecute the crimes that underly the AWA Application, Order, and supporting materials, and the docket on which such materials would be documented for perusal by both the public and targets of the investigation while it remains underway.  Significant negative consequences could follow from public disclosure, including alerting subjects to the existence of the warrant, revealing steps that the Government and others might take to effectuate the subjects' arrest including securing a third party's assistance in the execution of a sealed federal arrest warrant, and by revealing the names individuals who may or may not have charges eventually brought against them.  Opening that information to the public could prompt any remaining subjects or associates to flee, conceal or destroy evidence, or take other steps to evade responsibility for their crimes.

Petitioners argue that the government cannot claim an interest in preserving "the secrecy of law enforcement techniques," such as occurred in *In re U.S. Dep't of Just. Motion to Compel Facebook to Provide Tech. Assistance in Sealed Case*, 357 F. Supp. 3d 1041, 1044 (E.D. Cal.

14

2019), *aff'd sub nom. United States Dep't of Just. v. Am. C.L. Union Found.*, 812 F. App'x 722 (9th Cir. 2020) (holding that a sealed court ruling was not subject to disclosure to a civil rights organization and newspaper under First Amendment right of access because, inter alia, if wiretap techniques were disclosed publicly, it would "compromise law enforcement efforts in many, if not all, future wiretap investigations.").  The fact that Sabre engages in "hot-watch" monitoring of travelers on behalf of the government is already public due to Petitioners' own reporting and the existence of the particular AWA Order at issue – which dates back to 2016 – also is already public, again due to Petitioners' reporting.  *See* Brewster Article.  Petitioners, citing *Custer Battlefield Museum*, also argue that, to the extent the AWA Materials contain information for which there is a compelling or countervailing governmental interest to maintain under seal, the Court "can accommodate those concerns by redacting sensitive information rather than refusing to unseal the materials entirely."  *Custer Battlefield Museum*, 658 F.3d at 1195 n.5.  Quite significantly, *Custer Battlefield Museum* concerns disclosure of warrant materials in a *completed* investigation not one, as here, that is ongoing.  Thus, Petitioners' reliance on *Custer Battlefield Museum* and their wholesale discounting of the need for continued nondisclosure during the course of an investigation falls flat.

The strength of that Government interest is not diminished by Petitioners' public reporting that a third party offers the Government "another tool to watch over travelers across the world." *See* Brewster Article.  Although Petitioners referred to third-party assistance in one case, the Brewster Article otherwise provides only generalized information about the potential capacity of a third party to provide "traveler information" to the Government to facilitate criminal investigations and prosecutions.  *See* Brewster Article.  To the extent the Government has a substantial interest in protecting sensitive sources and methods of gathering information here, it is compelling because revealing such sources and methods to the general public could give criminal actors information needed to thwart future efforts to use similar techniques to investigate crimes and execute arrest warrants.

Where unsealing materials could reveal "significantly more information" implicating compelling Government interests, public awareness of some details about that matter does not

United States District Court
Northern District of California

vitiate those interests.  *See, e.g., Index Newspapers LLC*, 766 F.3d at 1087-88 (decision by a grand jury witness to "disclose what he may have learned about the grand jury investigation" did not eliminate Government's interest in grand jury secrecy).

Any AWA Materials for which a First Amendment right of access might have been found should nonetheless remain under seal because non-disclosure is necessitated by compelling governmental interests and is narrowly tailored to serve that interest.

**B.     The Public, Through the Petitioners, Has No Common-Law Right of Access to the AWA Materials But, Even If There Were Such a Right, Compelling Reasons Would Overcome the Presumption of Access**

The Supreme Court has recognized a qualified "common-law right of access to judicial records," which amounts to "a general right to inspect and copy public records and documents, including judicial records and documents."[4]  *Nixon*, 435 U.S. at 597.  This right is justified by the interest of citizens in "keep[ing] a watchful eye on the workings of public agencies," *id.* at 598, aided by newspapers which "publish information concerning the operation of government."  *Id.*

Even so, the common-law right of access is "not absolute."  *Id.*  "Every court has supervisory power over its own records and files," *id.*, and must "weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts," *id.* at 602, such that "the decision as to access is one best left to the sound discretion of the trial court, discretion to be exercised in light of the relevant facts and circumstances of the particular case."  *Id.* at 599.

However, "[a] narrow range of documents is not subject to the right of public access at all because the records have 'traditionally been kept secret for important policy reasons.'"  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted).  The Ninth Circuit has identified two categories of documents that fall in this category: "grand jury transcripts and warrant materials during the pre-indictment phase of an investigation."  *Id.* at 1185.  The

---

[4] Petitioners argue that the Government fails to recognize that the putative AWA materials are judicial records with a presumption of public access.  Appl. p. 8.  However, the Government has not argued that the documents are not judicial records but rather that they are judicial records to which no right of public access exists.  The Government asserts that no common-law right of access attaches to AWA materials during an ongoing investigation because they implicate the same concerns as "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation," which the Ninth Circuit has said are not subject to a common-law right of access. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

Ninth Circuit does "not readily add classes of documents to this category." *Id.*

Where the common-law right applies, unless a particular court record is one traditionally kept secret, "a strong presumption in favor of access is the starting point." *Id.* at 1178 (citations and quotation marks omitted). "A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by ... 'articulat[ing] compelling reasons' ... that outweigh the general history of access and the public policies favoring disclosure." *Custer Battlefield Museum*, 658 F.3d at 1194-95 (quoting *Kamakana*, 447 F.3d at 1178-79). "Simply invoking a blanket claim, such as privacy or law enforcement, will not, without more, suffice to exempt a document from the public's right of access." *Kamakana*, 447 F.3d at 1185.

The first step in any inquiry under the common law right of access is whether this right applies at all to the type of documents at issue. *Custer Battlefield Museum*, 658 F.3d at 1192. The Ninth Circuit has unequivocally held that the common law right of access does not apply to warrant materials "during the pre-indictment stage of an ongoing criminal investigation." *Times Mirror*, 873 F.2d at 1221. By contrast, "the public has a qualified common law right of access to warrant materials after an investigation has been terminated," *Custer Battlefield Museum*, 658 F.3d at 1194.

Unfortunately, it is not true that every criminal proceeding is either pre-indictment or post-investigation, in particular if there are multiple targets of the investigation. The SDCA Application's reference to an arrest warrant makes clear there was either an indictment or a complaint because one of those is necessary to get an arrest warrant, but it is also true that the government's investigation is ongoing, and the Government's under seal *ex parte* statement makes clear that the AWA Materials in this ongoing investigation are comparable to warrant materials during the pre-indictment stage of an ongoing criminal investigation: "the ends of justice would be frustrated, not served, if the public were allowed access" to them. *Times Mirror Co.*, 873 F.2d at 1219.

In addition, this Court has found no First Amendment right of access to the AWA Materials under its own analysis, and "[t]he First Amendment is generally understood to provide a stronger right of access than the common law." *Doe*, 870 F.3d at 997. For both of these reasons,

17

1    the Court finds that there is no common law right of access to the AWA Materials.

2         Regardless, even if some of the AWA Materials were judicial documents to which a

3    common-law right of access attached, compelling government interests outweigh any common-

4    law presumption of public access.  The AWA Materials relate to an investigation that is currently

5    active, and all of the policy reasons discussed above in the First Amendment context counsel in

6    favor of nondisclosure under the common law as well.  Unsealing this material could alert targets

7    to the existence of the investigation, reveal steps the Government takes to effectuate arrest, and

8    reveal the names individuals who may or may not have charges eventually brought against them.

9    Disclosing that information to the public could prompt targets to flee, destroy evidence, or take

10   other steps to evade responsibility for their crimes.  *See also In re Copley Press, Inc*., 518 F.3d

11   1022, 1029 (9th Cir. 2008) (compelling interest against disclosure for purposes of the First

12   Amendment also sufficed to justify nondisclosure under the common law).

13        Petitioners rely heavily on *Dousa v. U.S. Dep't of Homeland Security*, No. 19-cv-1255,

14   2020 WL 4784763 at *2 (S.D. Cal. Aug. 18, 2020), to argue that the common law right of access

15   applies and is not overcome by compelling reasons, Reply pp. 5-8, but their reliance is misplaced.

16   In *Dousa*, the California Border Patrol ("CBP") filed a Motion to Seal arguing that information

17   that had already been public for five months was "law enforcement sensitive" because it would

18   "reveal techniques and methods [of information collection], including intelligence collection goals

19   and priorities and the particular geographic and operational areas of focus."  Appl., p. 6, *quoting*

20   *Dousa*, 2020 WL 4784763, at *2.  The *Dousa* Court denied the motion to seal, concluding that

21   "CBP's interest in a vain attempt to reclaim lost secrecy isn't compelling enough to overcome the

22   strong First Amendment interests in maintaining public access to the information."  *Id.* at *1.

23        *Dousa* is readily distinguished.  Here, Petitioners are attempting to obtain information that

24   was never made public, namely the AWA Materials in the criminal action pending in this court.

25   All they know from the SDCA Application is the conclusion that in 2016 this District issued an

26   AWA Order directing Sabre to assist in effectuating an arrest warrant, but nothing else has been

27   disclosed, including any of the facts of the case, the name or names of the person or people to be

28   arrested, the basis for the AWA Order, any other targets of the pending investigation, and so on.

United States District Court
Northern District of California

The Government's opposition brief is not a vain attempt to reclaim lost secrecy but an effort to prevent the secrecy from being lost in the first place.

Petitioners are dissatisfied with the specificity of representations the Government makes regarding the sensitivity of the information contained in the AWA Materials.  They argue that it is not enough for the Government to describe the AWA Materials as "documents in a matter related to ongoing criminal matters" or that it would "damage . . . ongoing investigations" to grant the Application, but the Government "must demonstrate harm from the unsealing of these specific records and explain why redaction cannot accommodate its concerns."  Reply, p. 8, citing *Kamakana*, 447 F.3d at 1184 (generic references to an ongoing investigation insufficient "without any further elaboration or any specific linkage with the documents").  This unfairly characterizes the Government's arguments, which actually contain many more indications of the type of information that would be revealed in the AWA Materials, e.g., such materials would "identify participants, subjects, and targets of an investigation – some of those individuals may be charged and at large and others may have been uncharged or exonerated and, therefore, need not be publicly disclosed."  Opp. at 11.

Petitioners claim that the Government does not represent that the warrant to which the AWA Materials pertain "has not been executed, or that they concern an individual who has not been indicted or taken into custody, even though courts typically consider those factors when determining whether the common law right is overcome as to pre- or post-investigation warrant materials."  Petitioners seem to ignore the Government's representation, to which the Court is entitled to give deference, that the materials relate to an ongoing investigation and require secrecy.[5]

In support of their request, Petitioners assert that "[t]he government's use of the AWA to obtain judicial orders requiring private technology firms in general, and Sabre in particular, to provide technical assistance to the government is a matter of intense public interest, as well as a

---

[5] When determining whether to grant a sealing order and in reviewing such orders, courts "have necessarily been highly deferential to the Government's determination that a given investigation requires secrecy and that warrant materials be kept under seal."  *Times Mirror Co.*, 873 F.2d at 1214.

United States District Court
Northern District of California

subject of Petitioners' reporting."  Appl. ¶ 4; Brewster Article.  Petitioners state that they, like all members of the public and the press, "have a strong interest in observing and understanding the consideration and disposition of matters by the federal courts," Appl. ¶ 3, and "[t]hat interest is heightened when the action of the Court concerns actions taken by the executive branch."  *Id.* Petitioners also state that the public and the press "have a particularly strong interest in access to court records that would shed light on the government's collection of location records, which 'hold for many Americans the privacies of life,'" *id.* ¶ 5, and that "[t]he disclosure of such information to the government implicates a range of weighty constitutional and policy interests, including reporter-source confidentiality."  *Id.*  As a result, Petitioners assert, "the public and press have a keen interest in understanding the government's basis for seeking an AWA order directing Sabre to provide it with contemporaneous travel information about a targeted individual, as well as the district court's basis for issuing such an order."  *Id.*

In essence, then, Petitioners argue that the Court should grant its unsealing request because the public has an important interest in knowing how the Government is making third parties assist in law enforcement activities and the media must be able to provide more information to contribute to the important public debate on these types of issues.

The Government declines to confirm the existence of the AWA Materials in an unsealed filing because, if they exist, they were considered "worthy of being sealed" by the Court and remain under seal by Court Order.  Opp. p. 4.  The Government asserts, however, that if any such AWA Materials do exist, they "could have identified one or more persons who were the subjects of an arrest warrant and described actions that the Government wanted take to execute one or more warrants."  Opp. p. 5.  The Government asserts that, as of the date of its filing on February 16, 2021, its "criminal investigation related to that matter is still ongoing and many of the concerns that originally caused the matter to be sealed persist."  *Id.*  The Government claims that any *ex parte* AWA proceedings in this case "would have been ancillary to, and in furtherance of, the execution of an arrest warrant that was itself under seal," *id.* at p. 7, and would relate to the Government's efforts to secure a third party's "assistance in the execution of a sealed federal arrest warrant."  *Id.* at p. 11.  In essence, the Government argues that the Court should deny

Petitioners' unsealing request because compelling law enforcement and privacy interests require the continued sealing of any All Writs Act materials.

In terms of balancing competing interests, the Court finds persuasive the analysis performed in *Times Mirror Co.*, as when that Court said that "because the integrity and independence of these proceedings are threatened by public disclosures, claims of 'improved self-governance' and 'the promotion of fairness' cannot be used as an incantation to open these proceedings to the public.  Nor will the mere recitation of these interests open a particular proceeding merely because it is in some way integral to our criminal justice system." *Times Mirror Co.*, 873 F.2d at 1215.  Here, too, if the AWA Materials were disclosed, there would be "an obvious risk that the subject of a search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed." *Id.*  The public clearly has a strong, legitimate interest in understanding the Government's use of the All Writs Act to obtain technical-assistance orders directed at third parties.  At the same time, any potential "social utility," including a possible "curb on prosecutorial or judicial misconduct," *id*. at 1217, would be more than outweighed by the substantial burden or possibly total frustration of purpose that disclosure of the AWA Materials would impose on this investigation.

The *Granick* court refused even to disclose AWA orders related to investigations that had already concluded – in part because of administrative burden, true, but also because of governmental concerns regarding criminal investigations and privacy concerns for individuals who may have been named but not ultimately convicted or even charged.  Here, the fact that the Government's investigation continues in the matter weighs even more heavily in favor of this Court's exercise of its discretion to preclude public access to these AWA Materials.

The Court takes seriously its responsibility to weigh and balance the competing claims of access in the form of the public's right to scrutinize the judicially authorized techniques the Government employs and the need for nondisclosure during an ongoing criminal investigation, particularly ensuring that a warrant is successfully executed.  It has weighed the interests advanced by both the Petitioners and the Government in light of the public interest and the Court's own duty to judiciously exercise supervisory power over court records and files.  Here, there is no basis for

21

any unsealing or disclosure because the Government's investigation referenced by the sealed matter continues.  The continued sealing of the AWA materials is accordingly a proper exercise of this Court's discretion under the common law.[6]

**C.     Petitioners' Motion to Unseal the Government's Statement of Facts ("Motion to Unseal").  ECF No. 14**

In addition to filing a public opposition brief, the Government filed *ex parte* and under seal a separate statement of facts providing details concerning the underlying investigation.  The Court finds that the concerns regarding potential compromise of an ongoing investigation, as detailed above, are sufficient grounds to deny Petitioners' Motion to Unseal the Government's Statement of Facts.

**D.     The Government's Request to Seal or Strike Petitioners' Papers**

The Government's Opposition "urges the Court to file Petitioners' brief under seal or to strike the attachment to Petitioners' brief and remove that document from the publicly available filing."  Opp., p. 4.  The Government argues that the SDCA filing has been resealed and was never intended to be unsealed.  In the alternative, the Government argues that Petitioners should have redacted the SDCA Application because it contains an individual's Indian passport number, which the government says is analogous to a Social Security number, which should not ordinarily be included in a public filing.  Fed. R. Civ. Proc. 5.2(a).  The Government also complains that the SDCA Application has an individual's home address, which Federal Rule of Criminal Procedure 49.1 does not allow.

The Government's request to file the Petitioners' brief under seal or to strike the SDCA Application from the public record is a vain attempt to reclaim lost secrecy and is denied. Petitioners have posted the Application on the internet, it has been in the public for over a year at this point, and their legal briefs go no further than what has already been publicly disclosed.

The Court reads Civil Rule 5.2 literally.  It does not state generally that personally

---

[6] Petitioners suggest a couple of times that the documents at issue could be redacted.  However, they do not develop that argument or cite any authority holding that the Government has an obligation to produce redacted documents when the Government has shown that there is no First Amendment or common law right to have access to them.

United States District Court
Northern District of California

identifying information should be redacted.  Rather, it specifically requires redaction of a Social Security number, taxpayer-identification number, birth date, name of a minor, and financial account number.  The Rule seems designed to prevent identity theft specifically with respect to financial fraud, and to protect the privacy of minors.   Many millions of Americans have passports, driver's licenses, and other forms of government-issued identification, and they all have numbers on them unique to the individual, but the Rule doesn't mention them, and they seem less directly connected to financial fraud.

Federal Rule of Criminal Procedure 49.1 does not seem to apply in this miscellaneous action because it is a civil proceeding, *see* Fed. R. Crim. Proc. 1(a)(1) ("These rules govern the procedure in all criminal proceedings . . ."), and the Government does not explain why that Rule should apply here.

Accordingly, the Court does not believe that the Government's request to seal or redact the SDCA Application has merit.

## V.    CONCLUSION

For the reasons stated above, the Court recommends that Petitioners' Application to Unseal Court Records be denied, their Motion to Unseal the Government's Statement of Facts be denied, and the Government's request to seal or redact Petitioners' papers be denied.

Any party may file objections to this report and recommendation with the district judge within fourteen days of being served with a copy.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.  Failure to file objections within the specified time may waive the right to appeal the district court's order.

**IT IS SO RECOMMENDED.**


Dated: April 26, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

23