STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorney
CATHERINE ALDEN PELKER (MD)

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    William.Frentzen@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE APPLICATION OF FORBES MEDIA LLC AND THOMAS BREWSTER TO UNSEAL COURT RECORDS | No. 21-mc-80017-PJH<br><br>UNITED STATES' OPPOSITION TO OBJECTIONS TO MAGISTRATE JUDGE REPORT AND RECOMMENDATION |

The United States respectfully submits this opposition to the objections by Forbes Media LLC and Thomas Brewster (collectively, "petitioners") to the well-reasoned Report and Recommendation issued by the Magistrate Judge, the Honorable Thomas S. Hixson, denying petitioners' motion to unseal certain court documents. As the Magistrate Judge found, neither the First Amendment nor the common law requires this Court to unseal the records that petitioners seek to review, and compelling law enforcement interests demand the continued sealing of those materials. This Court has already ruled on this issue in *In re Granick*, 388 F. Supp. 3d 1107, 1129 (N.D. Cal. 2019) (upholding magistrate judge's ruling denying motion to unseal All Writs Act applications and orders). In fact, petitioners here face a

higher hurdle than those in *Granick* because in *Granick* the documents sought to be unsealed related to matters that were no longer ongoing; here, by contrast, if there are any responsive documents, they relate to investigations that are ongoing.

Petitioners do not raise any new issues to upset the Magistrate Judge's well-reasoned opinion. Instead, they have tried to recast the argument by setting up a straw man – that the Magistrate Judge failed to consider each class of document. As will be pointed out below and as this Court can clearly see, however, the Magistrate Judge specifically stated that it was considering each class of document that the petitioners sought to unseal. The Court should therefore deny petitioners' objections without the need for any hearing.

Additionally, because this response raises factual arguments in direct response to petitioners' motion that implicate sensitive, non-public information to which petitioners should not have access, the government filed a separate statement *ex parte* and under seal to the Magistrate Judge that the government would request this Court to consider.

## BACKGROUND

Petitioners seek the public release of records that they assert relate to an application by the government for an order under the All Writs Act, 28 U.S.C. § 1651, in connection with a criminal investigation. The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. A federal court thus may "issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 150, 172 (1977). The All Writs Act "permits the district court, in aid of a valid warrant, to order a third party to provide nonburdensome technical assistance to law enforcement officers." *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979).

Here, the petitioners assert that the records they seek to unseal relate to the government's efforts to execute a federal arrest warrant in connection with an ongoing criminal investigation. Petitioners assert that the government submitted an *ex parte* application for an order under the All Writs Act, 28 U.S.C. § 1651, to require a third party to assist in the execution of a warrant.

Petitioners' assertions are based on a reference in an application for an AWA order in the Southern District of California (herein, the SDCA application and order). Pet. 4, Pet. Exh. 4. That application and the resulting order were themselves sealed when they were entered, were mistakenly unsealed for a brief period in 2020, but are currently subject to seal. Petitioners apparently retrieved the SDCA application and order during the temporary mistaken unsealing and have now attached it here in a public filing, despite the document being under seal currently by court order.[1]

It also appears to the government that there is a second issue with petitioners' filing the attachment from SDCA. That filing was not redacted and contains information that ordinarily should not be filed in public. Fed. R. Civ. P. 5.2 prevents the filing of personally identifying information without redactions. That rule is reflected in the instructions to filers in this Court. The inclusion of an individual's passport number is akin to a Social Security Number or driver's license number, both of which should ordinarily not be disclosed in a public filing. Similarly, Fed. R. Crim. P. 49.1 forbids the filing of an individual's home address in a public filing: "Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social security number, . . . or the home address of an individual, a party or nonparty making the filing may only include: the last four digits of the social security number . . . the city and state of home address." Here, petitioners unnecessarily made public both the passport number and the specific home address of an

---

[1] Petitioners try to confuse the Court into believing that the document is not currently sealed because it could be accessed in March of 2020 and there is no "motion to reseal" on the docket. Objections at 10, n.3. The government's understanding is that the matter was simply administratively resealed to cure the problem. In any event, if petitioners are claiming that the document is still available unsealed in the SDCA, then they should say so. The government's understanding is that it is currently sealed pursuant to the wishes of the court in SDCA.

3

individual. Accordingly, because 1) the SDCA filing has been resealed and was never intended to be unsealed, 2) the petitioners' filing includes an individual's passport number, and 3) the petitioners' filing includes an individual's home address, the government urges the Court to file petitioners brief under seal or to strike the attachment to petitioner's brief and remove that document from the publicly available filing.[2]

On January 25, 2021, petitioners filed a petition in this Court to request the unsealing of certain court records docketed at CR-16-90391. Specifically, petitioners have asked the Court unseal (1) any All Writs Act order; (2) the government's application for that order and any supporting documents; (3) any other court records relating to the order; and (4) the docket in case number CR-16-90391 and all docket entries.[3] In support of this request, petitioners claim that the public and the press, including petitioners, have "a strong interest" in the unsealing of these court records (collectively, "the All Writs Act materials"). Pet. 2; *see also* Pet. Mem. 4-5.

This Court considered whatever action was taken in the case identified by petitioners as worthy of being sealed. Because any such records remain under seal by order of this Court, the Government does not here confirm their existence in an unsealed filing. If such records do exist, the government's application could have identified one or more persons who were the subjects of an arrest warrant and described actions that the government wanted taken to execute one or more warrants.

---

[2] The Magistrate Judge denied a similar request by the government below in his Report and Recommendation. While the government understands the Magistrate's view that, effectively, the milk was out of the bottle, it maintains that the District Court in the Southern District of California saw fit to reseal the document despite that same reality, and this Court should not obviate that order by surrendering to petitioners' repeated efforts to defy it.

[3] On the same date, petitioners filed petitions in at least two other district courts to request the unsealing of similar All Writs Act records in other criminal cases, which were also referenced in the mistakenly unsealed SDCA materials. *See In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records*, No. 2:21-mc-52-MRH, Doc. 1 (W.D. Pa.) (filed Jan. 25, 2021); *In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records*, No. 2:21-mc-7-RSM, Doc. 1 (W.D. Wash.) (filed Jan. 25, 2021). The government understands that neither of the other cases has been decided to date.

As noted above, the Court sealed whatever application the government submitted and any resulting order, and those records remain under seal. As of the date of this filing, the government's criminal investigation related to that matter is still ongoing, and many of the concerns that originally caused the matter to be sealed persist.

**ARGUMENT**

Neither the First Amendment nor the common law entitles petitioners to access any All Writs Act materials that might exist, and this Court should uphold the Report and Recommendation denying unsealing because, as Judge Hixson concluded in his comprehensive and thoughtful order, compelling law enforcement and privacy interests require the continued sealing of any All Writs Act materials.

**I.      THE FIRST AMENDMENT DOES NOT ENTITLE PETITIONERS TO UNSEALING**

The First Amendment protects a qualified right of access to several stages of criminal proceedings. *Press-Enterprise Co. v. Super. Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*); *see id.* at 9; *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 603–04 (1982) (recognizing "the First Amendment right of access to criminal trials"); *United States v. Doe*, 870 F.3d 991, 996 (9th Cir. 2017). When this qualified right attaches to a particular criminal proceeding, the proceeding may nevertheless be closed to the public if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14 (quoting *Press-Enterprise Co. v. Superior Court of Calif., Riverside County*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*)). Here, no First Amendment right of access attaches to any All Writs Act materials that petitioners seek to access, and in any event, compelling interests require the continued sealing of any such materials.

      **A.      Petitioners Have No First Amendment Right of Access to the All Writs Act Materials**

To determine whether a qualified First Amendment right of access attaches to a particular criminal proceeding, courts apply a two-part "experience and logic" test that considers (1) "whether the

place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8–9; *see also Doe*, 870 F.3d at 997.  As the Magistrate Judge analyzed and found, Petitioners' unsealing request fails both prongs of the experience-and-logic test.  Petitioners accordingly have no First Amendment right of access to any All Writs Act materials they seek to obtain.

1.      No history of public access exists for proceedings relating to an All Writs Act order that requires a third party to assist in the execution of a sealed federal arrest warrant.  The Supreme Court first recognized a qualified First Amendment right of access to certain criminal proceedings in the context of criminal trials, which an "unbroken, uncontradicted" line of history showed to have "been open to all who care to observe." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564, 578 (1980) (plurality).  The Court later held that the right applies to jury selection and to the transcript of a "preliminary hearing" in a criminal case that "function[ed] much like a full-scale trial." *Press-Enterprise II*, 478 U.S. at 7; *see id.* at 10–13.  And the Ninth Circuit has extended the right to some aspects of guilty-plea proceedings, *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008); *Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990); and in-court sentencing proceedings, *Doe*, 870 F.3d at 997.

But other stages of criminal proceedings have no tradition of public access.  For example, "grand jury proceedings have traditionally been closed to the public and the accused." *Press-Enterprise II*, 478 U.S. at 10; *see also Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.218.  In addition, "[t]he investigation of criminal activity has long involved imparting sensitive information to judicial officers who have respected the confidentialities involved." *U.S. Dist. Court for Dist. of Oregon*, 407 U.S. at 320–21.  The Ninth Circuit thus has found "no historical tradition of public access to warrant proceedings" during an ongoing investigation, even though search-warrant materials may become public after the government serves the warrant. *Times Mirror Co. v. United States*, 873 F.2d

1210, 1213 (9th Cir. 1989); *see id.* at 1214; *see also United States v. U.S. Dist. Court for Eastern Dist. of Mich.*, 407 U.S. 297, 321 (1972) ("[A] warrant application involves no public or adversary proceedings: it is an ex parte request before a magistrate or judge."); *United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1194 (9th Cir. 2011) ("In the post-investigation context, warrant materials have generally been open to the public.").

As the Magistrate Judge correctly found, because any *ex parte* All Writs Act proceedings in this case would have been ancillary to, and in furtherance of, the execution of an arrest warrant that was itself under seal, they are not proceedings to which the public has historically had access. *Cf. In re Granick*, 388 F. Supp. 3d at 1129 (N.D. Cal. 2019) ("There is no Ninth Circuit authority recognizing a First Amendment right to access technical assistance orders under the [All Writs Act]."). The government is aware of no court that has recognized a history of public access to All Writs Act proceedings like the one at issue here. The Magistrate Judge similarly found no such decision.

Instead, petitioners focus on the categories of documents in which they are interested (court orders, government applications, and docket sheets), contending that those documents have historically been available to the public regardless of the proceedings to which they relate. But the cases that petitioners cite in support of that proposition do not consider the type of document at issue in isolation, untethered to the treatment of the proceeding in which the document appears. *See, e.g.*, *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014) (explaining that the experience-and-logic test is used "to determine whether the First Amendment right of access applies to a particular proceeding" and "documents generated as part of" it); *In re Copley Press*, 518 F.3d at 1027–28 (analyzing separately access to each type of document and hearing transcript, and even to those documents at different stages of the same hearing). And although courts have identified a right of access to docket sheets where the proceedings described in the docket were themselves generally subject to a right of access, courts have reached the opposite conclusion in cases involving grand jury matters and

other orders authorizing pretrial investigative steps. *See, e.g.*, *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 295 (4th Cir. 2013) ("[W]e have never held, nor has any other federal court determined, that pre-indictment investigative matters such as § 2703(d) orders, pen registers, and wiretaps, which are all akin to grand jury investigations, must be publicly docketed."); *In re Sealed Case*, 199 F.3d 522, 525-26 (D.C. Cir. 2000) (same for grand jury ancillary proceedings).

2. Considerations of "logic" also weigh against a right of access because public access would not "play[] a particularly significant positive role in" the functioning of proceedings to secure third-party assistance in executing arrest warrants. *Press-Enterprise II*, 478 U.S. at 9, 11. In support of their request for unsealing, petitioners contend that the public and the press have "a strong interest in observing and understanding the consideration and disposition of matters by the federal courts," especially when "the action of the Court concerns actions taken by the executive branch" or "would shed light on the government's collection of location records." Pet. 2; *see also* Pet. Mem. 4–5. The Supreme Court has recognized, however, that "[a]lthough many governmental processes best operate under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8–9. Courts have accordingly found that logic does not favor public access in circumstances where, as here, disclosure could hinder the government's ability to investigate and prosecute crimes.

For example, the Supreme Court has explained that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," in part because allowing public access to such "preindictment proceedings" would lead to "the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment." *Douglas Oil Co.*, 441 U.S. at 219. Likewise, the proceedings for the issuance of a search warrant are "necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove

evidence." *Franks v. Delaware*, 438 U.S. 154, 169 (1978); *see also Times Mirror Co.*, 873 F.2d at 1215 ("[I]f the warrant proceeding itself were open to the public, there would be an obvious risk that the subject of a search warrant would learn of its existence and destroy evidence of criminal activity before the warrant could be executed."). And even if such a proceeding "remained closed but the supporting affidavits were made public when the investigation was still ongoing, persons identified as being under suspicion of criminal activity might destroy evidence, coordinate their stories before testifying, or even flee the jurisdiction." *Times Mirror Co.*, 873 F.2d at 1215; *see also Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (explaining that "the need for sealing affidavits may remain after execution and in some instances even after indictment").[4]

Similar considerations have prompted this Court to find that the public has no First Amendment right of access to All Writs Act orders that require a third party to provide assistance "in furtherance of an underlying [search] warrant or surveillance order." *In re Granick*, 388 F. Supp. 3d at 1129–30. As this Court explained in upholding the order of the Magistrate Judge in *Granick*, "[a]pplications for [All Writs Act] orders are typically issued during the covert stages of an investigation and contain an explanation of why the order is necessary to a criminal investigation." *Id.* at 1129. The materials from All Writs Act proceedings thus "may discuss confidential informants, cooperating witnesses, wiretap investigations, grand jury matters, and sensitive law enforcement techniques." *Id.* Additionally, All Writs Act requests may identify participants, subjects, and targets of an investigation—some of those individuals may be charged and at large and others may have been uncharged or exonerated and, therefore, need not be publicly disclosed.

---

[4] *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d at 291–92 (finding that logic does not favor disclosure in the context of Section 2703(d) orders); *In re Search of Fair Finance*, 692 F.3d 424, 432 (6th Cir. 2012) ("[P]ublic access to search warrant documents prior to the execution of a search would harm criminal investigations by enabling criminal suspects to learn of impending searches and by potentially leading them to remove or destroy evidence."); *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000) ("Unlike typical judicial proceedings, grand jury proceedings and related matters operate under a strong presumption of secrecy.").

The All Writs Act proceedings petitioners assert exist here would have addressed a different type of third-party assistance, *i.e.*, assistance in the execution of a sealed arrest warrant, but similar concerns would arise if the public gained access to papers generated and filed in such proceedings. Those All Writs Act materials will often contain information that identifies the subject of the sealed arrest warrant and reveals the existence of the underlying grand jury investigation and sealed indictment. The same concerns regarding surveillance and search warrants are obviously present, if not enhanced, for the execution of arrest warrants and the actual apprehension of alleged criminals.

Further intensifying the impact of *Granick* on this motion is that the matters in *Granick* all involved *post-investigation* materials, including All Writs Act orders. In other words, in *Granick*, the petitioners were seeking the unsealing of documents from investigations that had concluded. Here, petitioners seek the unsealing of documents in a matter related to *ongoing* criminal matters. In light of the ongoing nature of the investigation and the facts included in the Government's *ex parte* factual addendum, the Court's sealing order in this case is at least as important as the sealing orders that this Court upheld in *Granick*. Here, without revealing what particular documents exist within the sealed matter, this Court would do grave damage to ongoing criminal investigations by granting petitioners' motion.

To guard against the risk that "criminal defendants not yet in custody may elude arrest upon learning of their indictment," *United States v. Balsam*, 203 F.3d 72, 81 (1st Cir. 2000), Federal Rule of Criminal Procedure 6(e) authorizes a magistrate judge to order the sealing of an indictment "until the defendant is in custody or has been released pending trial." Fed. R. Crim. P. 6(e)(4). The same concerns warrant the sealing of ancillary All Writs Act proceedings aimed at effectuating an arrest based on the charges in the underlying sealed indictment. Conversely, opening documents from such All Writs Act proceedings to public view could prompt the target of the arrest warrant to flee or take other steps to thwart the execution of the warrant. And to the extent that the All Writs Act documents reveal

the existence of a sealed indictment, their public release would likely violate Rule 6(e)'s prohibition on the public disclosure of information that reveals the existence of a sealed indictment "except as necessary to issue or execute a warrant or summons," Fed. R. Crim. P. 6(e)(4).

Furthermore, even after any underlying arrest warrant has been executed, records from the ancillary All Writs Act proceedings are likely to reveal techniques that the government used to effectuate the arrest and to explain a third party's ability or willingness to provide certain types of assistance in furtherance of the government's efforts.  Dissemination of those materials would enable wrongdoers to take measures to evade future arrests, including by avoiding or even retaliating against the third party who was ordered to assist the government.  "Openness" here thus would "frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so critical to the fair administration of justice." *Times Mirror*, 873 F.2d at 1213.

Because experience, logic, and case law in this Court weigh against a public right of access to the All Writs Act materials in this case, petitioners have no qualified First Amendment right to access those materials.

In an effort to get around the Magistrate Judge's well-reasoned opinion, petitioners now speculate that the Magistrate Judge did not perform a more granular analysis.  In other words, although they cannot claim any right to All Writs Act matters ancillary to a warrant, petitioners claim that the Magistrate Judge erred by not breaking down the request to every specific document (All Writs Act applications, orders, sealing motions, sealing orders, and docket records).  This last-ditch effort to get some part of some document somehow is misplaced.  It is speculative and ludicrous to think that the Magistrate Judge – whose day to day work largely includes accepting applications for process and issuing orders pursuant to those applications – somehow did not conceive of each type of document involved in the process.  Furthermore, it is totally inaccurate.  The Magistrate Judge expressly specified that he was considering each of the classes of documents involved in the All Writs Act process, Report

and Recommendation at 6-7, n. 1.  The Magistrate Judge expressly described the same classes of documents in footnote 1 of the Report and Recommendation as the matters he was considering.  Petitioners incorrectly claim that the Magistrate Judge did not do what he expressly did.  Petitioners' Objections at 12.

There is no basis to believe that there is any more a right, under the First Amendment or under the common law, to an All Writs Act application ancillary to a warrant than there is to any other part of the documents involved in obtaining, carrying out, or sealing that All Writs Act ancillary to a warrant.  Similar to the Magistrate Judge, this District Court is obviously intimately familiar with the various parts of applications, orders, sealing, and docket to understand and account for each part of the process in determining what should remain sealed.  Petitioners' claims related to this more granular approach are therefore both speculative and false.  The analysis and conclusion should remain the same as to each class of document involved and there is no basis to believe that the Magistrate Judge did not consider those parts of the overall process that is within his expertise.  In fact although petitioners gloss over it, the Magistrate Judge expressly described each of these types of documents he was considering.

Furthermore, breaking down the overall subject – All Writs Act ancillary to warrant – into separate classes of document does not remove each document from being ancillary to a warrant.  Thus, the class of document satisfies the Magistrate Judge's analysis, which makes is not subject to access under either First Amendment or common law analysis.

**B.    Compelling Interests Require the Continued Sealing of any All Writs Act Materials that Exist**

Even if petitioners had a qualified First Amendment right to access any All Writs Act materials, the Court should continue to maintain any such records under seal because "closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-Enterprise II*, 478 U.S. at

13–14 (quoting *Press-Enterprise I*, 464 U.S. at 510).[5]  The All Writs Act materials described by petitioners would relate to the government's efforts to secure a third party's assistance in the execution of a sealed federal arrest warrant.  As of the date of this filing, as described above, the sealed matters in this case relate to an ongoing criminal investigation.  Unsealing any materials could therefore jeopardize the government's ongoing efforts to investigate and prosecute the underlying crimes by alerting subjects to the existence of the warrant, revealing steps that the government and others might take to effectuate the subjects' arrest, and naming individuals who may not have had charges eventually brought against them.  Opening that information to the public could accordingly prompt any remaining subjects or associates to flee, conceal or destroy evidence, or take other steps to evade responsibility for their crimes.

More generally, "[t]he government has a substantial interest in protecting sensitive sources and methods of gathering information."  *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985) (en banc).  That interest, if it applies here, is compelling because granting the public access to such sources and methods could give wrongdoers a roadmap for thwarting future efforts to use similar techniques to investigate crimes and effectuate arrest warrants.

For this reason, as the Magistrate Judge found, redactions are not a feasible solution.  Substantively, the petitioners are seeking disclosure concerning law enforcement's techniques for and method of gathering information.  Thus, there is no practical manner by which redaction of an All Writs Act proceedings that sought third-party assistance in the execution of an arrest warrant could avoid disclosure of law enforcement's techniques and methods.

Petitioners, perhaps seeing that their arguments are flawed and that the Magistrate Judge was correct, are now making a claim for redacted versions.  But because there was no right of access in the first instance, there is no basis for redacted production.  Furthermore, the valid law enforcement interest

---

[5] *See also North Jersey Media Group Inc.*, 836 F.3d at 429 (3d Cir. 2016); *Doe*, 870 F.3d at 998.

in continued sealing further outweighs the prospect of requiring some version of a redacted production. Petitioners' claims that redacted versions would continue to protect the government's obviously legitimate interests in maintaining sealing over ongoing investigations are obviously nothing more than rank speculation.  As the petitioners do not understand any ongoing investigation or in what manner disclosures could create problems related both to tipping off suspects and targets as well as outing the potentially innocent.  The means of an investigation can be as revealing as the contents of the investigation, a point that petitioners clearly do not understand but the Magistrate Judge did.

Unsealing redacted AWA materials, an option that petitioners originally mentioned only in passing but now press more desperately, would not adequately protect the government's interests because redacted versions of the AWA materials would still make it possible to make certain inferences about the underlying case(s) that would potentially damage the investigation(s). It would also make it possible to infer non-public information about law enforcement sources and methods. For that reason, this is a case in which the United States' compelling interests in secrecy cannot be accommodated by redactions. *Cf. Custer Battlefield*, 658 F.3d at 1195 n.5 (noting that "the need to protect an ongoing investigation," the need to preserve the secrecy of grand jury proceedings, and other interests can justify the "withholding of disclosure" of warrant materials "outright").

The strength of the government interest is not diminished by petitioners' public reporting that any third party offers the government "another tool to watch over travelers across the world."  Thomas Brewster, *The FBI Is Secretly Using A $2 Billion Travel Company As A Global Surveillance Tool*, Forbes (July 16, 2020 7:10 a.m.), *available at* https://perma.cc/R96R-AXL9.  Although petitioners described specific assistance they claim occurred in one case, petitioners' article otherwise provides only generalized information about third party potential capacity to provide "traveler information" to assist the government in criminal investigations and prosecutions.  *See id.*  Where unsealing materials could reveal "significantly more information" implicating compelling government interests, public awareness

of some details about that matter does not vitiate those interests. *Dhiab v. Trump*, 852 F.3d 1087, 1096 (D.C. Cir. 2017); *see also Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567 (4th Cir. 2004) (considering "whether the granting of access to the contents of an ongoing police investigation file will disclose facts that are otherwise unknown to the public"); *Index Newspapers LLC*, 766 F.3d at 1087–88 (grand jury witness's decision to "disclose what he may have learned about the grand jury investigation" did not eliminate government's interest in grand jury secrecy).

In any event, in cases addressing the qualified law enforcement privilege in criminal prosecutions, courts allow the government to withhold information from criminal defendants about specific law enforcement techniques when disclosure could compromise the efficacy of that technique in future criminal investigations, even though the criminal defendant and the public may know that the government employs that practice as a general matter. *See, e.g.*, *In re the City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) ("detailed information about the undercover operations of the NYPD"); *United States v. Green*, 670 F.2d 1148, 1155-56 (D.C. Cir. 1981) ("police surveillance locations"). If the government's interest in preserving the efficacy of evidence-gathering techniques in future investigations can be strong enough to keep that information from a criminal defendant facing loss of liberty, then it surely is sufficient to shield that information from the public at large, especially given the strong public interest in ensuring the effective investigation of crime. *Cf. Doe*, 870 F.3d at 1000 (recognizing that the government interest in cooperator safety is based in part on the need to advance "future criminal investigations").

## II. THE COMMON LAW DOES NOT ENTITLE PETITIONERS TO UNSEALING

The Magistrate Judge also properly rejected petitioners claims pursuant to common law. The Supreme Court has recognized a qualified "common-law right of access to judicial records," which amounts to "a general right to inspect and copy public records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is "not absolute." *Id.* at 598. Rather,

"[e]very court has supervisory power over its own records and files," *id.*, and must "weigh[] the interests advanced by the parties in light of the public interest and the duty of the courts," *id.* at 602.  See also *United States v. Sleugh*, 896 F.3d 1007, 1013 (9th Cir. 2018).  The Supreme Court has therefore recognized that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

The government hereby asserts that no common-law right of access attaches to All Writs Act materials during an ongoing investigation because they are "documents which have traditionally been kept secret for important policy reasons," *Times Mirror*, 873 F.2d at 1219, and implicate the same concerns as "grand jury transcripts and warrant materials in the midst of a pre-indictment investigation," which the Ninth Circuit has said are not subject to a common-law right of access, *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  The government acknowledges that the Ninth Circuit has also stated that it will "not readily add classes of documents to this category." *Id.* at 1185.  And the Ninth Circuit has also held that "the public has a qualified common law right of access to warrant materials after an investigation has been terminated," *see United States v. Business of Custer Battlefield Museum and Store*, 658 F.3d 1188, 1194 (9th Cir. 2011), and language from *Granick*, 388 F. Supp. 3d at 1129, could be interpreted to have found a common law interest in All Writs Act materials.  However, the government maintains that no such right exists.  Fortunately, this Court need not reach that issue in this case.

Even if some All Writs Act records were judicial documents to which a common-law right of access might attach, *Nixon*, 435 U.S. at 597, the common law does not entitle petitioners to unsealing of any All Writs Act materials here because of the compelling government interests described throughout this pleading outweigh any presumption of public access.  As further described above, in *Granick*, this Court refused to disclose All Writs Act orders that related to investigations that had concluded.  Here,

16

there is no basis for any unsealing or disclosure because the government's investigations referenced by the sealed matter continue. The continued sealing of the All Writs Act materials is accordingly a proper exercise of this Court's discretion under the common law.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court uphold the Magistrate Judge's Report and Recommendation and deny petitioners' request for unsealing. The government also respectfully submits that this Court should respect the sealing order from SDCA and order that petitioners' references to that matter be sealed.

DATED: June 4, 2021                                     Respectfully submitted,

                                                        STEPHANIE M. HINDS
                                                        Acting United States Attorney

                                                                /s/
                                                        WILLIAM FRENTZEN
                                                        Assistant United States Attorney

                                                        CATHERINE ALDEN PELKER
                                                        Trial Attorney