1   KATIE TOWNSEND (SBN 254321)
    ktownsend@rcfp.org
2   REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
3   1156 15th Street NW, Suite 1020
    Washington, D.C. 20005
4   Telephone: (202) 795-9300
    Facsimile: (202) 795-9310
5
6   *Counsel for Applicants Forbes
    Media LLC and Thomas Brewster*
7
8
9                  UNITED STATES DISTRICT COURT
10               NORTHERN DISTRICT OF CALIFORNIA
11
12  **IN RE APPLICATION OF FORBES MEDIA**        Misc. Case No. 3:21-mc-80017
    **LLC AND THOMAS BREWSTER TO**
13  **UNSEAL COURT RECORDS**                     Related to CR1690391 MISC EDL
14                                               **REPLY IN SUPPORT OF APPLICANT'S**
15                                               **MOTION FOR DE NOVO**
                                                 **DETERMINATION OF DISPOSITIVE**
16                                               **MATTER REFERRED TO MAGISTRATE**
                                                 **JUDGE**
17
18                                               **Noticed Hearing:**
                                                 **Date:** Thursday, June 24, 2021
19                                               **Time:** 1:30pm
                                                 **Judge:** Hon. Phyllis J. Hamilton
20
21
22
23
24
25
26
27
28

REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION (Misc. Case. No. 3:21-mc-80017)

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................iii

**ARGUMENT** ............................................................................................................... 1

    **I.**    **The Government's renewed request to seal information that is already in the public domain is meritless, procedurally improper, and, in any event, forfeited.** ... 1

    **II.**    **Whether under the common law or the First Amendment, each type of sealed record must be considered separately; the Report expressly did not do so.** ............. 2

    **III.**    **A presumption of public access attaches to each class of sealed records here.** ......... 4

    **IV.**    **The Report errs by analogizing all of the sealed All Writs Act records at issue to warrant materials.** ...................................................................................... 6

    **V.**    **To the extent countervailing interests overcome the presumption of access to portions of records here, only redaction—not wholesale sealing—is warranted.** ..... 9

**CONCLUSION** ......................................................................................................... 11

**REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION (Misc. Case. No. 3:21-mc-80017)**

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092 (9th Cir. 2016) ................................. 3, 4

*In re Apple*, 149 F. Supp. 3d 341 (E.D.N.Y. 2016) ................................................................. 11

*In re Application for a Pen Register Touch–Tone Decoder & Terminating Trap,* 610 F.2d 1148 (3d Cir. 1979) ................................................................................................ 8, 11

*In re Application for an Order Authorizing Disclosure of Location Information*, 849 F. Supp. 2d 526 (D. Md. 2011) ................................................................................................ 11

*In re Application for an Order Authorizing the Roving Interception of Oral Communications*, 349 F.3d 1132 (9th Cir. 2003) ................................................................................. 10

*In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008) ................................................... 1, 2, 5, 8

*In re Granick*, 388 F. Supp. 3d 1107 (N.D. Cal. 2019) ....................................................... 3, 6

*In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders,* 964 F.3d 1121 (D.C. Cir. 2020) (Garland, J.) ................................................................................. 6

*In re One Gray and Black Colored Apple iPhone*, No. 1:16-mj-02007 (D. Mass. Apr. 8, 2016) ....... 5

*Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ................................... *passim*

*Knapp v. Lake Shore R. Co.*, 197 U.S. 536 (1905) ............................................................... 4

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ............................................................. 3

*N.Y. Times Co. v. United States* ("*The Pentagon Papers Case*"), 403 U.S. 713 (1970) ..................... 4

*Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985) ...................................... 10

*Plum Creek Labor Co. v. Hutton*, 608 F.2d 1283 (9th Cir. 1979) ........................................... 4

*Stern v. South Chester Tube Co.*, 390 U.S. 606 (1968) ......................................................... 4

*Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989) ................................. 4, 5, 7

*United States v. Alonso*, 48 F.3d 1536 (9th Cir. 1995) ......................................................... 6

*United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188 (9th Cir. 2011) .......................................................... 5, 9

*United States v. Index Newspapers LLC*, 766 F.3d 1072 (9th Cir. 2014) .................................. 2, 5, 8

*United States v. Kwok Cheung Chow*, No. 14-cr-00196, 2015 WL 5094744 (N.D. Cal. Aug. 28, 2015) ...................................................................................................................... 3

*United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012) ................................................ 6

*United States v. Mountain States Tel. & Telegraph Co.*, 616 F.2d 1122 (9th Cir. 1980) ............... 4, 7

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977) ........................................................ 10

*United States v. Ressam*, 221 F. Supp. 2d 1252 (W.D. Wash. 2002) ..................................... 3

**Statutes**

28 U.S.C. § 636(b)(1) ........................................................................................ 1

iii

**REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION (Misc. Case. No. 3:21-mc-80017)**

**Other Authorities**

Alina Selyukh, *A Year After San Bernardino and Apple-FBI, Where Are We on Encryption?*, NPR (Dec. 3, 2016), https://perma.cc/N7HE-JCU7 .............................................................. 10

All Writs Act Order on Sabre to Give Real Time Updates on Travel of Suspect, DocumentCloud, https://perma.cc/KV8R-7TK9 (last visited June 10, 2021) ........................................................... 1

Brief of Former United States Magistrate Judges as Amici Curiae in Support of Petitioner, *American Civil Liberties Union v. United States*, No. 20-1499 (U.S. May 27, 2021) ............. 9, 11

*Forbes Wants Gov't Application for Arrest Assistance Opened*, Law360 (June 1, 2021), https://perma.cc/2YE8-TVFZ ...................................................................... 1

James Comey, *Encryption, Public Safety, and 'Going Dark'*, Lawfare (July 6, 2015), https://perma.cc/HH6M-YLAY ...................................................................... 10

Janus Rose, *Apple's Next Encryption Battle is Likely Playing Out in Secret in a Boston Court*, Vice (Mar. 31, 2016), https://perma.cc/X7UA-D9YV ........................................................... 5

Motion to Vacate Order Compelling Apple Inc., *In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, 5:16-cm-0010 (C.D. Cal. Feb. 16, 2016) ................................................... 8, 11

**REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION (Misc. Case. No. 3:21-mc-80017)**

Forbes Media LLC and Thomas Brewster ("Applicants") respectfully submit this reply in support of their motion for de novo determination as to the April 26, 2021 Report and Recommendation issued by Magistrate Judge Thomas Hixson ("Report") (ECF No. 17).

## ARGUMENT

**I.      The Government's renewed request to seal information that is already in the public domain is meritless, procedurally improper, and, in any event, forfeited.**

The Government's opposition opens by asking this Court to seal information that has been publicly available on the internet for close to a year.  *See* United States' Opposition to Objections to Magistrate Judge Report and Recommendation ("Gov't's Opp.") at 3–4; All Writs Act Order on Sabre to Give Real Time Updates on Travel of Suspect, DocumentCloud, https://perma.cc/KV8R-7TK9 (last visited June 10, 2021).  That request is meritless, as the Report concluded.  *See* Report at 22–23.  Moreover, if the Government wished to challenge the Report's recommendation that this Court deny the Government's request to seal the Application to Unseal, the Government was required to file objections to that portion of the Report within the statutory time frame.  *See* 28 U.S.C. § 636(b)(1); *see also* Civil L.R. 72-3(a) (objections "*must* be made as a 'Motion for De Novo Determination'") (emphasis added).  It did not do so, and its untimely objection is forfeited.

Regardless, the Government has no legitimate interest in sealing a judicial record that was made available on the public docket of the Southern District of California months ago, that was published months ago, and that also appears on the public dockets of multiple matters that have themselves been the subject of press coverage.  *See Forbes Wants Gov't Application for Arrest Assistance Opened*, Law360 (June 1, 2021), https://perma.cc/2YE8-TVFZ.  "Secrecy is a one-way street:  Once information is published, it cannot be made secret again."  *In re Copley Press*, 518 F.3d 1022, 1025 (9th Cir. 2008).  And the Government's continued insistence that public information be sealed should inform this Court's review of whether its other secrecy claims have a good-faith basis.  *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006).

**II.     Whether under the common law or the First Amendment, each type of sealed record must be considered separately; the Report expressly did not do so.**

As Applicants have consistently stressed, determining whether a presumption of access attaches to particular records requires a court to consider each type of record at issue, even where all of the records were filed in connection with a single proceeding and concern the same subject matter.  *See United States v. Index Newspapers LLC*, 766 F.3d 1072, 1088 (9th Cir. 2014) (separate analyses of transcript of contempt hearing, motion for contempt, and contempt order); *In re Copley Press*, 518 F.3d at 1026–28 (separate analyses of transcript of hearing on motion to seal, sealing motion and order, and attachments to sealing motion).  The Government concedes as much.  *See* Gov't's Opp. at 7 (arguing that Ninth Circuit law requires "analyzing separately access to each type of document" and even the same "documents at different stages of the same hearing").  Nevertheless, the Government describes as "totally inaccurate" Applicants' "last ditch" objection that the Report failed to do so, claiming it is "speculative and ludicrous to think that the Magistrate Judge . . . somehow did not conceive of each type of document involved in the process."  *Id.* at 11.

The Government's response is expressly contradicted by the Report.  The footnote the Government points to as purported evidence that the Magistrate Judge conducted a separate analysis of each type of sealed document at issue states exactly the opposite: "For purposes of analysis," the Report explicitly "grouped together as analogous to warrant materials" all of the records at issue, with the exception of docket sheets.  Report at 6 n.1.[1]  The Government cites no Ninth Circuit authority that would authorize this "grouped together" approach, though the Government cites ample Ninth Circuit authority that forbids it.  *See, e.g.*, Gov't's Opp. at 7 (*citing Index Newspapers*,

_____

[1]     That the Report took the approach Applicants object to is starkest with respect to sealing motions and orders.  The Report acknowledges that "[t]he Ninth Circuit has extended the right of public access to . . . orders granting motions to seal" but never goes on to consider whether withholding such records in full, as opposed to redacting them, is narrowly tailored to a compelling interest.  *Id.* at 6 n.2; *see id.* at 22 n.6 (explaining that the Report does not consider redaction).

2

766 F.3d at 1084).  And the Government offers no response whatsoever to the observation that *In re Granick* took this approach *only* because of forfeiture:  The parties in that case agreed—in Applicants' view incorrectly—that "the analysis of the public access claims with respect to the underlying investigative materials applies to the supporting AWA materials."  *In re Granick*, 388 F. Supp. 3d 1107, 1129 (N.D. Cal. 2019).  Applicants are not bound by another litigant's concessions and have consistently urged that their own unsealing application in this matter be resolved in a manner consistent with Ninth Circuit case law, taking into account the relevant distinctions between warrants and each of the different types of judicial records filed in an All Writs Act proceeding.

The Report's error is not a mere formality.  Both the common law and constitutional rights of access are grounded in the "public interest in understanding the judicial process," *Kamakana*, 447 F.3d at 1179, and courts cannot assign that interest due weight without taking stock of the role a specific kind of document plays in the exercise of "Article III powers," *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1100 (9th Cir. 2016) (citation omitted).  For instance, the public has separate—if overlapping—interests in understanding what the Government argues the law should be and what a court "say[s] . . . the law is."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).  As a result, the right-of-access analysis may differ as to "substantively identical" records that reflect those different interests.  *United States v. Ressam*, 221 F. Supp. 2d 1252, 1262 (W.D. Wash. 2002) (proposed protective orders become subject to a presumption of access when endorsed by the court); *see also, e.g.*, *United States v. Kwok Cheung Chow*, No. 14-cr-00196, 2015 WL 5094744, at *4 (N.D. Cal. Aug. 28, 2015) ("excerpts of Title III materials" become subject to a presumption of access when "incorporate[ed] into the parties' arguments and the Court's analysis").  But on the Report's framing, a court's reasoned analysis of a statute—as reflected in its own decision or order—will be kept secret if even a fraction of its contents overlap with those of an affidavit filed in support of a related warrant application.  That is not the law in the Ninth Circuit.

**REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION (Misc. Case. No. 3:21-mc-80017)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    A presumption of public access attaches to each class of sealed records here.

Here, each category of documents sought—All Writs Act orders, All Writs Act applications, sealing motions, sealing orders, and docket sheets—is subject to a presumption of access under both the common law and the First Amendment.[2]  The Ninth Circuit has already explained, as a matter of legal process, what class of documents technical-assistance orders belong to:  They are injunctions.  *See Plum Creek Labor Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979); *United States v. Mountain States Tel. & Telegraph Co.*, 616 F.2d 1122, 1129 n.7 (9th Cir. 1980).  And the Ninth Circuit has held that the common law presumption attaches to injunctive-relief filings, which is what an application for such an order is.  *Ctr. for Auto Safety*, 809 F.3d at 1100.  Of course, the Government could opt to include sensitive material in any motion for an injunction or comparable equitable relief.  *Cf. N.Y. Times Co. v. United States* ("*The Pentagon Papers Case*"), 403 U.S. 713, 732–733 (1970) (White J., concurring) (noting the Court's ability to resolve the case in public while keeping secret any properly sealed material).  But no litigant could reasonably suggest that judging whether a presumption of public access applies to such a motion should look narrowly to the history of 'motions for an injunction against publication of classified histories of the Vietnam War,' ignoring the long, unbroken history of access to "writ[s] of injunction."  *Stern v. South Chester Tube Co.*, 390 U.S. 606, 609 (1968) (quoting *Knapp v. Lake Shore R. Co.*, 197 U.S. 536, 543 (1905)).  This Court should reject the Government's invitation to take that blinkered approach here.

---

[2]    As detailed in the Motion for De Novo Determination, experience and logic support a First Amendment presumption of access to each class and, thus, the broader common law presumption plainly attaches as well.  But because it is Applicants' position that the common law entitles them to all the unsealing they seek, they would encourage the Court to start the analysis there.  *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989) (explaining that the Ninth Circuit has "found a common law right of access" even to records that "traditionally had been kept confidential" unless an applicant "cannot," on any facts, show "disclosure would serve the ends of justice") (citation omitted); *Kamakana*, 447 F.3d at 1184–85 (explaining that the "traditionally kept secret" exception to the common law presumption is a "term of art" that requires more than a finding that records would "usually or often [be] deemed confidential" in a case-by-case analysis).

4

Similarly, there is no question that a presumption of access attaches to sealing motions and orders in this case.  The Report itself acknowledges that "[t]he Ninth Circuit has extended the right of public access to . . . orders granting motions to seal," Report at 6 n.2, and the Ninth Circuit does not start the right-of-access analysis from scratch every time a familiar document is filed in a case with a new subject matter.  *Index Newspapers*, for instance, looked to the history of "[m]otions to unseal judicial proceedings and orders ruling on those motions"—not the history of motions to unseal filed in contempt proceedings in particular—and it drew on examples from a range of settings.  766 F.3d at 1096 (citing *In re Copley Press*, 518 F.3d at 1025 (plea hearing); *Kamakana*, 447 F.3d at 1176–78 (civil action); and *Times Mirror*, 873 F.2d at 1211–12 (warrant proceeding)).  Again, this approach prevents interests specific to a "particular case," which are properly addressed when judging whether the presumption is overcome, from distorting the analysis whether the presumption attaches in the first place.  *United States v. Business of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1194 (9th Cir. 2011).

Finally, the Government does not respond to Applicants' observation that the consequence of the Report's recommendation as to docket sheets will be that citizens never receive notice of their opportunity to assert their access rights, even where they have meritorious claims.  This same dynamic unfolded in the case of an All Writs Act application and order unsealed in the District of Massachusetts in 2016:  The ACLU was able to assert its right of access only because the order's existence was referenced in a public search warrant affidavit.  *See* Janus Rose, *Apple's Next Encryption Battle is Likely Playing Out in Secret in a Boston Court*, Vice (Mar. 31, 2016), https://perma.cc/X7UA-D9YV.  The Government in that case promptly conceded that there was no continued need to seal the application and order.  *See* Motion to Unseal, *In re One Gray and Black Colored Apple iPhone*, No. 1:16-mj-02007 (D. Mass. Apr. 8, 2016) (ECF No. 8).  If not for that stray reference, though, a docket that was concededly unconstitutionally sealed would have

remained sealed indefinitely.  The docket sheet at issue here, too, is subject to a presumption of

access, just as docket sheets have presumptively been open for centuries.  *See United States v.*

*Mendoza,* 698 F.3d 1303, 1304 (10th Cir. 2012); *In re Leopold to Unseal Certain Electronic*

*Surveillance Applications and Orders,* 964 F.3d 1121, 1129 (D.C. Cir. 2020) (Garland, J.).

**IV.    The Report errs by analogizing all of the sealed All Writs Act records at issue to
warrant materials.**

Even if this Court were inclined to offer an umbrella answer to the question whether a

presumption of access attaches to 'filings in an All Writs Act proceedings ancillary to the execution

of a warrant,' the answer to that question is yes.  For one, as the Government concedes for the

second time, this Court already recognized a common law right of access to All Writs Act materials,

even where the petitioners failed to argue for an independent analysis of each type of record at

issue.  *See* Gov't's Opp. at 16 (citing *In re Granick*, 388 F. Supp. 3d at 1129).  The Government

does not explain how or in what sense this Court erred in doing so, asserting only that the

Government "maintains that no such right exists."  *Id*.  But it is not this Court's responsibility to

puzzle out the basis for suggestions "adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation."  *United States v. Alonso*, 48 F.3d 1536, 1544 (9th Cir. 1995).[3]

At a minimum, that the common law presumption of access applies here should be obvious.

More broadly, even if the 'ancillary' approach advanced by the Government was not

erroneous, the Government's effort to analogize the All Writs Act materials here to warrant

---

[3]    Notably, the Government does not mention that the Report offers different reasons for
departing from *In re Granick*'s common law conclusion than anything the Government proposes.  It
does not defend, for instance, the Report's suggestion that a finding that All Writs Act materials are
traditionally kept secret can be based on facts about "the AWA Materials in *this* ongoing
investigation."  Report at 17 (emphasis added).  Understandably so:  That suggestion is inconsistent
with Ninth Circuit law, which looks to "classes" of documents because case-by-case interests are
best accommodated case-by-case.  *Kamakana*, 447 F.3d at 1185.  Similarly, the Government does
not defend the Report's suggestion that its First Amendment analysis is also dispositive of the
common law analysis, *see* Report at 17–18, likely because the Report—in an effort to resolve a
question the Government failed to brief—misstates the relative reach of the two presumptions.

materials only highlights why the Ninth Circuit does not use it.  The Government breezes past

critical distinctions between All Writs Act and warrant proceedings, as detailed in Applicants'

opening motion.  *See* Memorandum of Points of Authorities at 15–17 (ECF No. 20-1).  Consider the

continuing emphasis the Government places on the rule of *Times Mirror* that a presumption of

access does not attach to pre-indictment search warrants and supporting affidavits.  873 F.2d at

1217.  As the Ninth Circuit stressed, a key fact about those materials *as a class* is that the public can

review them at a subsequent suppression hearing.  *See id.* at 1218.  But neither the Report nor the

Government answers Applicants' objection that this is not true of All Writs Act materials, such that

attempting to apply *Times Mirror* here turns a 'public-access-later' rule into a 'public-access-never'

rule.  That is, of course, what happened in the Southern District of California:  If not for its

unsealing and Applicants' reporting, the All Writs Act application filed there would have remained

secret long past the conclusion of that case—to say nothing of the execution of the arrest warrant—

because its existence is not reflected on the public docket even though the warrant's existence is.

*See* Brewster Decl., Ex. 1 (ECF No. 13-2).  Such a result would be flatly inconsistent with *Times*

*Mirror*'s observation that "there must be *some* process by which society can monitor law

enforcement officials' decisions to search or seize," eventually if not immediately.  873 F.2d at

1218 n.11 (emphasis added).  But in failing to account for the distinctive features of All Writs Act

proceedings, the rule the Government proposes would leave the public with no such opportunity.

Similarly, the Government continues to maintain that All Writs Act proceedings are non-

adversary, *see* Gov't's Opp. 7, in the face of Ninth Circuit precedent making clear that is false, *see*

*Mountain States Tel. & Telegraph Co.*, 616 F.2d at 1133 (holding that a technology provider

"should be afforded reasonable notice and an opportunity to be heard prior to the entry of any order

compelling its assistance").[4]  That error reflects a failure to appreciate that—in the All Writs Act

context, but not the warrant context—the "only meaningful time" to debate whether relief is

justified is *before* a court decides whether to order a third-party to provide the assistance sought.  *In*

*re Application for a Pen Register Touch–Tone Decoder & Terminating Trap*, 610 F.2d 1148, 1157

(3d Cir. 1979).  The Government's own past approach to such proceedings reflects as much.  It was

the Government—not Apple—that moved to make public its motion for technical assistance in San

Bernardino, even though that warrant had not yet been executed, even though the Government

continued to maintain that other suspects could be at large, and even though the technique of

compelled decryption was not familiar to the public at the time.  *See* Motion to Vacate Order

Compelling Apple Inc. at 11 n.22, *In the Matter of the Search of an Apple iPhone Seized During the*

*Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, 5:16-

cm-0010 (C.D. Cal. Feb. 16, 2016) (ECF No. 16).  Clearly the Government believed not only that

"public scrutiny would benefit the proceedings," by reassuring the public that the Government's

request was justified, but also that the critical moment for public deliberation was during the

pendency of the motion.  *In re Copley Press*, 518 F.3d at 1026 n.2 (internal quotation omitted).  The

Government cannot have it both ways, approaching these proceedings as a species of impact

litigation when it views its hand to be strong and recharacterizing the matter as a secret investigative

proceeding when it would prefer to avoid scrutiny.  Yet, in allowing the Government to elide the

distinctions between warrant and All Writs Act proceedings, the Report countenances just that.

---

[4]      The *Mountain States* court noted that such a hearing "can proceed *in camera*" if necessary to avoid "alert[ing] others to the possibility of surveillance." *Id.*  But consistent with the Ninth Circuit's admonition that access to a potentially sensitive hearing is "not an all-or-nothing proposition," *Index Newspapers*, 766 F.3d at 1090, courts approach such considerations case-by-case rather than categorically, as the San Bernardino litigation highlights.  And the fact that a hearing may proceed *in camera* does not make it non-adversarial; the third-party whose assistance is sought must still be given notice and an opportunity to oppose, and that opportunity will also allow the third-party to contest the degree of secrecy that the Government claims is necessary.

**REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION (Misc. Case. No. 3:21-mc-80017)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.   To the extent countervailing interests overcome the presumption of access to portions of records here, only redaction—not wholesale sealing—is warranted.**

Because it should be clear that, at a minimum, the common law presumption of access applies to each category of records requested, this case should have proceeded promptly to the question whether the Government can make the showing necessary to justify redacting some portion of the records that Applicants seek to have unsealed.  *See Kamakana*, 447 F.3d at 1185; *Custer Battlefield Museum*, 658 F.3d at 1195 & n.5.  But even with a second opportunity to do so, the Government has yet to explain why redaction would be unworkable in this case, even though this Court can look to the example of the Southern District application and see that the Government's interests could only possibly apply to a segregable portion.  And while the Government claims that "the Magistrate Judge found[] redactions are not a feasible solution," Gov't Opp. at 13, the Report does not contain any such finding:  The Magistrate Judge made express that he did not consider redaction on the misplaced view that Applicants "d[id] not develop that argument," Report at 22 n.6.  When pressed, the Government's position seems to be that no degree of public access to All Writs Act filings is ever tolerable, even in matters—like the one in the Southern District of California—where the warrant has been executed and the individual has been tried and sentenced. *See* Gov't Opp. at 13 ("[T]here is no practical manner by which redaction of an All Writs Act proceedings [sic] that sought third-party assistance in the execution of an arrest warrant could avoid disclosure of law enforcement's techniques and methods.").  That position is untenable.

For one, that position is wholly inconsistent with the actual practice of the federal courts. As several former magistrate judges recently explained to the Supreme Court, judges routinely "publish[] their reasoning when answering novel questions regarding surveillance requests . . . while simultaneously accommodating compelling governmental interests" by using tools like redaction.  *See* Brief of Former United States Magistrate Judges as Amici Curiae in Support of Petitioner at 4, *American Civil Liberties Union v. United States*, No. 20-1499 (U.S. May 27, 2021);

9

*id.* at 8–12 (collecting examples, including cases arising under the All Writs Act); *see also, e.g.*, *In re Application for an Order Authorizing the Roving Interception of Oral Communications*, 349 F.3d 1132, 1133–34 (9th Cir. 2003) (resolving in a published opinion whether the Wiretap Act's technical assistance provisions could be used to require an automobile company to use its on-board systems as a surveillance device).  Applicants have offered yet more examples in the All Writs Act context—including examples of orders and related documents unsealed while a warrant remains unexecuted—that accomplish exactly that, and the Government has not addressed them.  The Government cannot maintain that federal judges are not up to a task they accomplish every day.

What's more, the practical consequences of the Government's position would be perverse.  Consider its effect on the role of Congress.  At base, the All Writs Act is a gap-filling statute.  *See Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).  Few would deny that— whatever the best answer to the question whether the Act permits a particular kind of order— Congress is the actor best equipped to provide clear standards when controversy arises.  In just that vein, the Pen Register Act displaced reliance on *United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977), in the context of pen registers, and San Bernardino prompted a flurry of bills that would have created a framework for decryption orders, *see* Alina Selyukh, *A Year After San Bernardino and Apple-FBI, Where Are We on Encryption?*, NPR (Dec. 3, 2016), https://perma.cc/N7HE-JCU7.  But Congress cannot judge whether tailored legislation is necessary to address requests otherwise litigated under the All Writs Act if lawmakers have no information about the ways in which the Government is using the Act in the first place.  Secrecy short-circuits the democratic deliberation that the Government has previously conceded is preferable.  *See* James Comey, *Encryption, Public Safety, and 'Going Dark'*, Lawfare (July 6, 2015), https://perma.cc/HH6M-YLAY.

The practical effect of the Government's view on the operation of the courts is similar.  Any application under the All Writs Act can raise novel questions that may take dozens of pages in the

Federal Reports to resolve.  *See, e.g.*, *In re Apple*, 149 F. Supp. 3d 341, 344–76 (E.D.N.Y. 2016).

Such applications can implicate rights under the Fourth Amendment, *see In re Application for an Order Authorizing Disclosure of Location Information*, 849 F. Supp. 2d 526, 580–81 (D. Md. 2011); the Due Process and Takings Clauses, *see In re Application for a Pen Register,* 610 F.2d at 1156–1157; and the First Amendment, *see* Motion to Vacate Order Compelling Apple Inc, *supra*, at 32–34.  But on the Government's approach, courts should be expected to spot and answer all of those questions essentially *sua sponte*, without access to the reasoning of other courts or litigants that have addressed them.  And as the other applications that Applicants have highlighted to this Court make clear, the Government hardly goes out of its way to preview these issues to courts itself.

The practical consequence, as former magistrate judges have described based on their first-hand experience, is that secrecy enables the Government to shop for favorable precedent while burying adverse decisions, leaving the path of surveillance law "vulnerable to the whims of prosecutorial decision-making and strategic objectives rather than judicial review."  Brief of Former Magistrate Judges, *supra*, at 22.  Understandably, the Government would endorse such a regime, one in which its interests are always and everywhere dispositive.  But what the common law calls for is conscientious balancing.  *See Kamakana*, 447 F.3d at 1179.  By no stretch of the imagination can the approach the Government proposes to this Court—in which the public's interest in knowing what the law is never justifies the unsealing of a single line of legal argument or legal conclusion in a single judicial record in the context of court-ordered technical assistance—be called a balance.

## CONCLUSION

For the foregoing reasons, Applicants respectfully request that this Court reject the Report; hold that the common law and First Amendment presumptions of access apply to the judicial records under seal in CR1690391 MISC EDL; and either direct the clerk to unseal them or, to the

**REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION (Misc. Case. No. 3:21-mc-80017)**

extent the Government has demonstrated a compelling interest in sealing portions of records, order

the Government to propose redactions.

Dated: June 10, 2021                                          */s/ Katie Townsend*
                                                             Katie Townsend
                                                             ktownsend@rcfp.org
                                                             REPORTERS COMMITTEE
                                                               FOR FREEDOM OF THE PRESS
                                                             1156 15th St. NW, Ste. 1250
                                                             Washington, D.C. 20005
                                                             Telephone: (202) 795-9303.

                                                             *Counsel for Applicants Forbes Media*
                                                             *LLC and Thomas Brewster*

**REPLY IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION (Misc. Case. No. 3:21-mc-80017)**