1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FORBES MEDIA LLC, et al.,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 21-mc-80017-PJH

**ORDER RULING ON MOTION FOR DE NOVO DETERMINATION AND DENYING PETITION**

Re: Dkt. No. 20

On June 24, 2021, the court held a hearing on the motion of petitioners Forbes Media, LLC, and Thomas Brewster ("Petitioners") for de novo determination of dispositive matter referred to magistrate judge, pursuant to Civil L.R. 72-3, and objections to the April 26, 2021, report and recommendation ("R&R") of the magistrate judge to deny their petition to unseal court records ("Petition"). Dkt. 17. For the reasons set forth below, the motion for de novo determination is **GRANTED**; the objections to the R&R are **OVERRULED**; the R&R is fully adopted as correct, well-reasoned and thorough; and the disposition on the Petition recommended by the R&R is accepted by the court. Accordingly, the Petition is **DENIED**.

**I.    Background**

   **A.    Fact Summary**

   Forbes Media, LLC, ("Forbes") is a news media company and publisher. Thomas Brewster is an associate editor for Forbes, covering security, surveillance, and privacy issues. On March 10, 2020, Brewster obtained an All Writs Act ("AWA") application from the public docket of the Southern District of California ("S.D. Cal. Application"). This

1   application had been unsealed on February 14, 2020, according to the clerk's stamp.

2   The S.D. Cal. Application requested an order compelling Sabre, a travel technology firm,

3   "to provide representatives of the FBI complete and contemporaneous 'real time' account

4   activity" for an individual subject to an arrest warrant—what the government refers to as a

5   "hot watch" order.  Dkt 1-1 at 2, 4.

6          In support of the S.D. Cal. Application, the government identified several other

7   instances in which it had asked for and obtained technical assistance orders under the

8   AWA imposing similar surveillance obligations on Sabre.  The S.D. Cal. Application refers

9   to the following cases within the Ninth Circuit in which Sabre complied with AWA orders

10  to assist with government hot watches: (1) Western District of Washington, AWA Order

11  GJ10-097, signed 2019; (2) Western District of Washington, AWA Order GJ17-432,

12  signed 2017; and (3) Northern District of California, AWA Order CR-16-90391 MISC EDL,

13  signed 2016.  Dkt. 1-1 at 4.  The S.D. Cal. Application more generally cites to the

14  following cases in which other district courts have issued AWA orders: Western District of

15  Pennsylvania, case number 15-880; and Eastern District of Virginia, case number 1:15-

16  CR-245.

17         In July 2020, petitioners published an article about the contents of the S.D. Cal.

18  Application along with a copy of the document.  See Thomas Brewster, The FBI Is

19  Secretly Using a $2 Billion Travel Company as a Global Surveillance Tool, FORBES, July

20  16, 2020.[1]

21         The government initially neither confirms nor denies that the AWA applications and

22  orders Petitioners seek even exist.  The government avers that, if any responsive

23  documents exist, they relate to ongoing investigations.  However, in its opposition papers,

24  the government explicitly asserts that the AWA materials at issue relate to an ongoing

25  criminal investigation that is itself sealed.  See, e.g., Dkt. 12 at 5.[2]

26

27  [1] Available at: https://www.forbes.com/sites/thomasbrewster/2020/07/16/the-fbi-is-
secretly-using-a-2-billion-company-for-global-travel-surveillance--the-us-could-do-the-

28  same-to-track-covid-19/?sh=32c729fb57eb (last visited June 30, 2021).
[2] The court is unwilling to engage in the intellectual gymnastics necessary to decide on

2

**B.    Procedural Posture**

In January 2021, petitioners filed applications in three of the courts referenced above to unseal the identified AWA applications and orders, and this miscellaneous matter comprises the application for the documents sought in this district (CR-16-90391 MISC EDL).  See Dkt. 1 at 1; In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records, No. 2:21-mc-52 (W.D. Pa. Jan. 25, 2021); In re Application of Forbes Media LLC and Thomas Brewster to Unseal Court Records, No. 2:21-mc-0007 (W.D. Wash. Jan. 25, 2021).  As in this case, the applications submitted in the other courts requested access to the court orders themselves; the government's applications and supporting documents; and any other related judicial records, including motions and orders to seal, docket sheets, and any docket entries.  See Dkt. 1 at 1.

Petitioners named the U.S. Attorney's Office for the Northern District of California as an interested party in this case.  Dkt. 2.  The government filed its opposition to the application on February 16, 2021.  Dkt. 12.  The government additionally submitted directly to the magistrate judge an ex parte, confidential fact supplement on the same day.  Petitioners filed their reply in support of the application on February 23 (Dkt. 13), along with a motion to unseal the ex parte, confidential fact supplement (Dkt. 14).  The government filed an opposition to this motion to unseal the fact supplement on April 22.  Dkt. 16.  Judge Hixson issued the R&R now at issue on April 26.  Dkt. 17.  The case was reassigned to this court.

Petitioners filed their motion for de novo determination in accordance with Civil L.R. 72-3, including their objections to the report, on May 10.  Dkt. 20.  The motion was fully briefed, and the court held a hearing on the motion on June 24.

**C.    Issues to be Decided**

Centrally, petitioners' original request is for the court to unseal (1) the AWA Order that required Sabre, a travel technology firm, to assist the United States government in

---

the continued sealing of documents that may not exist.  The documents exist, they relate to an ongoing criminal investigation, and the court's decision rests on those bases.

1  effectuating an arrest warrant in case number CR-16-90391 MISC EDL.   Petitioners

2  additionally request that the court unseal (2) the government's application for the AWA

3  Order and any supporting documents, including affidavits; (3) any other court records

4  relating to the AWA Order, including, but not limited to, any motions to seal, the docket in

5  case number CR-16-90391 MISC EDL, and all docket entries.  Dkt. 1.

6  In addition to its opposition to the Petition, the government requests that the court

7  seal or strike the S.D. Cal. Application (Dkt. 1-1) because the Southern District of

8  California did not intend for that document to become unsealed and because the

9  document contains personal identifying information of a foreign national.  Dkt. 24 at 4.

10  The government submitted to the magistrate judge an ex parte, highly sensitive

11  statement of facts in addition to its original opposition to the application to unseal.  That

12  statement of facts is not entered on the docket.  Applicants separately request that the

13  court unseal this document.  Dkt. 14.

14  Regarding the report and recommendations now at issue (Dkt. 17), petitioners ask

15  the court to reject as incorrect the report's conclusions that (1) the common law right of

16  access does not attach to the documents here sought; (2) the common law right of

17  access was overcome with respect to the entirety of each document sought; (3) the First

18  Amendment right of access does not attach to the documents here sought; and (4) the

19  First Amendment right of access was overcome with respect to the entirety of each

20  document sought.

21  **II.      Standard of Review**

22  When a party has timely filed written objections to the proposed findings and

23  recommendations of a magistrate judge, a district judge shall make "a de novo

24  determination of those portions of the report or specified proposed findings or

25  recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  The court "may

26  accept, reject, or modify, in whole or in part, the findings or recommendations made by

27  the magistrate judge," and "may also receive further evidence or recommit the matter to

28  the magistrate judge with instructions." Id.

4

**III.     Discussion**

There are two public rights of access to the work of the judiciary, one under the

First Amendment and the other under the common law.  Each is analyzed separately and

in turn.

**A.     First Amendment Public Right of Access**

**1.     Legal Standard**

Under Ninth Circuit authority, "the public has no right of access to a particular

proceeding without first establishing that the benefits of opening the proceedings

outweigh the costs to the public."  Times Mirror Co. v. United States, 873 F.2d 1210,

1213 (9th Cir. 1989).  To determine whether the public has a First Amendment right of

access to a judicial proceeding or documents generated from the proceeding, "[c]ourts

are required to examine whether 1) historical experience counsels in favor of recognizing

a qualified First Amendment right of access to the proceeding and 2) whether public

access would play a 'significant positive role in the functioning of the particular process in

question.'"  Id. (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8 (1986)

("Press-Enterprise II")).

While courts must consider both "historical experience" and "logic" to determine

whether the public has a First Amendment right to access to a particular proceeding,

Ninth Circuit authority recognizes that "logic alone, even without experience, may be

enough to establish the right."  In re Copley Press, Inc., 518 F.3d 1022, 1026 (9th Cir.

2008) (citation omitted).  As construed by the panel in Copley Press, the "experience and

logic" tests "are not separate inquiries.  Where access has traditionally been granted to

the public without serious adverse consequences, logic necessarily follows.  It is only

where access has traditionally not been granted that we look to logic.  If logic favors

disclosure in such circumstances, it is necessarily dispositive."  Copley Press, 518 F.3d

at 1026 n.2.

However, "[e]ven when the public enjoys a First Amendment right of access to a

particular proceeding, the public still can be denied access if closure 'is necessitated by a

5

1  compelling governmental interest, and is narrowly tailored to serve that interest.'" <u>Id.</u> at

2  1211 n.1 (quoting <u>Press-Enterprise Co. v. Superior Court</u>, 464 U.S. 501, 509-10 (1984)

3  ("<u>Press-Enterprise I</u>")).

4  **2.  Analysis**

5  Petitioners argue that the public's First Amendment right of access attaches to the

6  documents they seek to unseal.  Petitioners assert that the report failed to separately

7  assess each category of documents (All Writs Act orders, All Writs Act applications,

8  sealing motions, sealing orders, and docket sheets) under the First Amendment

9  framework.

10  The government, in opposition, identifies that there is no history of public access

11  for proceedings relating to an AWA order that requires third-party assistance in the

12  execution of a federal arrest warrant.  The government resists petitioners' argument that

13  the court should consider whether the type of each document at issue is one traditionally

14  kept secret.  While petitioners focus on the categories of documents in which they are

15  interested (court orders, government applications, and docket sheets), the cases they cite

16  in support of their historical accessibility do not consider the type of document at issue in

17  isolation, "untethered to the treatment of the proceeding in which the document appears,"

18  says the government.  Dkt. 24 at 7 (citing <u>United States v. Index Newspapers, LLC</u>, 766

19  F.3d 1072, 1084 (9th Cir. 2014) (explaining that the experience and logic test is used "to

20  determine whether the First Amendment right of access applies to a particular proceeding

21  and documents generated as part of" it); and <u>Copley Press</u>, 518 F.3d at 1027-28).

22  Here, the First Amendment right of access does not attach to the materials at

23  issue.  The experience test is not met where, traditionally, there has been no public

24  access to proceedings involving third party assistance in the execution of a sealed arrest

25  warrant.  As identified by this court in the matter of <u>In re Granick</u>, 388 F. Supp. 3d 1107,

26  1129 (N.D. Cal. 2019), "There is no Ninth Circuit authority recognizing a First Amendment

27  right to access technical assistance orders under the [AWA]."  In contrast to the post-

28  investigation materials at issue in <u>Granick</u>, the documents petitioners seek to have

6

1    unsealed here are related to *ongoing* criminal matters, which have historically remained

2    shielded from public view.  Times Mirror Co., 873 F.2d at 1214; Copley Press, 518 F.3d

3    at 1027-28.

4        Under the logic prong of the test, too, the AWA materials at issue, requiring third

5    party assistance in furtherance of an underlying sealed warrant, are not the type that

6    would benefit from public scrutiny.  This court previously determined that the public has

7    no First Amendment right of access to AWA orders that require a third party to provide

8    assistance "in furtherance of an underlying [search] warrant or surveillance order."

9    Granick, 388 F. Supp. 3d at 1129-30.  The court explained that applications for AWA

10   orders are typically issued during the "covert stages of the investigation," and they "may

11   discuss confidential informants, cooperating witnesses, wiretap investigations, grand jury

12   matters, and sensitive law enforcement techniques."  Id. at 1129.  The materials at issue

13   discuss just those matters.  These documents, regardless of their classification (court

14   orders, government applications, and docket sheets), contain information that identifies

15   the subject of the sealed arrest warrant and reveals the existence of the underlying grand

16   jury proceedings, information worthy of sealing.  Public access would not play a

17   "significant positive role" in an ongoing, sealed criminal investigation.  Press-Enterprise II,

18   478 U.S. at 8.

19       Moreover, because these AWA proceedings may identify persons charged and at

20   large and others uncharged or exonerated, there exist compelling reasons to avoid their

21   public disclosure.  Despite the journalists' persuasive calls for transparency, openness

22   here would "frustrate criminal investigations and thereby jeopardize the integrity of the

23   search for truth that is so critical to the fair administration of justice."  Times Mirror Co.,

24   873 F.2d at 1213.

25       Therefore, the court concludes that the First Amendment right of access does not

26   attach to the documents sought by petitioners.  The experience prong of the test fails

27   where there is no historical access to warrant materials during the pendency of an

28   investigation, and the logic test fails where ongoing law enforcement efforts greatly

7

1  outweigh the potential benefit of public scrutiny.  Even if the qualified First Amendment

2  right of access attached to these documents, compelling governmental interests

3  necessitate their continued non-disclosure while the investigation remains ongoing and

4  sealed.

5          **B.      Common Law Public Right of Access**

6                  **1.      Legal Standard**

7          The public has a common law right "to inspect and copy public records and

8  documents, including judicial records and documents." Nixon v. Warner Communications

9  Inc., 435 U.S. 589, 598 (1978).  The Ninth Circuit has recognized that while the Supreme

10  Court "has not precisely delineated the contours of that right, it has made clear that 'the

11  right to inspect and copy judicial records is not absolute.'" Times Mirror, 873 F.2d at

12  1218 (quoting Nixon, 435 U.S. at 598).

13          The Ninth Circuit has adopted a strong presumption in support of the common law

14  right to inspect and copy judicial records and a balancing test "that accommodates both

15  the presumption to which the common law right of access is entitled and the limitations

16  that may properly be placed upon it." Valley Broadcasting Co. v. U.S. Dist. Court for Dist.

17  of Nevada, 798 F.2d 1289, 1294 (9th Cir. 1986).  The court in Valley Broadcasting

18  stressed the importance of a clear statement of the basis of a denial of access "so as to

19  permit appellate review of whether relevant factors were considered and given

20  appropriate weight." Id. at 1294.  Factors weighing in favor of public access include

21  promoting the public's understanding of the judicial process and of significant public

22  events.  Weighing against public access "would be the likelihood of an improper use,

23  'including publication of scandalous, libelous, pornographic, or trade secret materials;

24  infringement of fair trial rights of the defendants or third persons; and residual privacy

25  rights.'" Id. (quoting United States v. Criden (In re National Broadcasting Co.), 648 F.2d

26  814, 830 (3d Cir. 1981) (Weis, J., concurring)).

27                  **2.      Analysis**

28          The assessment framework for the common law right of access, as petitioners

United States District Court
Northern District of California

1   frame it, begins by determining whether the materials under consideration for sealing

2   from public view fall into a limited scope of documents "traditionally kept secret."  See

3   Dousa v. U.S. Dep't of Homeland Security, No. 19-cv-1255, 2020 WL 4784763, at *2

4   (S.D. Cal. Aug. 18, 2020).  The class of documents "traditionally kept secret," a

5   classification not readily broadened, includes (1) grand jury transcripts, (2) warrant

6   materials during the pre-indictment phase of an investigation, and (3) attorney-client

7   privileged materials.  Id. at *2 (citing Kamakana v. City and County of Honolulu, 447 F.3d

8   1172, 1185 (9th Cir. 2006) (grand jury transcripts and warrant materials); Lambright v.

9   Ryan, 698 F.3d 808, 820 (9th Cir. 2012) (attorney-client privileged materials)).  In

10  particular, the petitioners charge, the R&R erred by broadening the class of documents

11  "traditionally kept secret" to include the documents at issue here: filings in an AWA matter

12  ancillary to a sealed arrest warrant.  Petitioners argue that because AWA orders are

13  injunctions and the common law right of access attaches to injunctions, the common law

14  right of access attaches to the AWA materials here.  See Ctr. for Auto Safety v. Chrysler

15  Grp., LLC, 809 F.3d 1092, 1100 (9th Cir. 2016).  And petitioners argue that the R&R's

16  analysis of the common law right of access, similar to the R&R's analysis of the First

17  Amendment analysis discussed above, erred by failing to assess separately whether

18  each type of document requested falls into the "traditionally kept secret" classification.

19          The government counters that petitioners are not entitled to unsealing under the

20  common law analysis.  The government identifies that, while there is a common law right

21  of access to judicial records, it is not absolute, allowing courts supervisory power over

22  their own records and files.  Nixon, 435 U.S. at 587.  Even if the AWA materials involved

23  here were documents to which a common law right of access would attach, the

24  government argues that the compelling interests outweigh the presumption of public

25  access.

26          Here, petitioners cannot prevail under the common law right of access either.

27  First, no common-law right of access attaches to AWA materials during an ongoing

28  investigation because they are "documents which have traditionally been kept secret for

9

1  important policy reasons." <u>Times Mirror</u>, 873 F.2d at 1219. The materials sought here

2  are "warrant materials in the midst of a pre-indictment investigation," which the Ninth

3  Circuit has said are not subject to a common-law right of access. <u>Kamakana</u>, 447 F.3d at

4  1185. Though the petitioners broadly distinguish AWA materials from warrant materials,

5  asking the court to consider first the type of document based on its place in the

6  underlying proceeding (e.g., AWA applications, AWA orders, or sealing orders), the court

7  concludes that such a tunnel-visioned parsing is unnecessary and inappropriate. The

8  AWA materials involved here, specifically giving effect to a warrant from this district, are

9  specifically related to an ongoing criminal investigation. They therefore fall within the

10  class of materials traditionally kept secret, a class the Ninth Circuit has said is not subject

11  to a common law right of access.

12  Second, and in addition, the AWA materials at issue should remain under seal

13  because compelling interests require continued sealing. As noted above, unsealing the

14  documents sought here would "frustrate criminal investigations and thereby jeopardize

15  the integrity of the search for truth that is so critical to the fair administration of justice."

16  <u>Times Mirror</u>, 873 F.2d at 1213. Unsealing the materials in this case would jeopardize

17  ongoing investigations by revealing the government's targets and investigatory

18  techniques. The government's interest in protecting its sources and methods of

19  gathering information is both substantial and compelling because granting the public

20  access to these documents would provide criminal wrongdoers insight into the

21  investigation and a roadmap to avoid apprehension.

22  **C.  Redaction and Sunshine Provision**

23  The court concludes that, while the petition must be denied, it raises important

24  issues related to public access and government transparency. In their original application

25  to unseal documents, petitioners posit that "[t]he government's use of the AWA to obtain

26  judicial orders requiring private technology firms in general, and Sabre in particular, to

27  provide technical assistance to the government is a matter of intense public interest."

28  Dkt. 1 at ¶ 4. Recognizing the realities of our ever-more technology-focused lives,

United States District Court
Northern District of California

1  petitioners also emphasize that the public and the press "have a particularly strong

2  interest in access to court records that would shed light on the government's collection of

3  location records, which 'hold for many Americans the privacies of life,'" and that "[t]he

4  disclosure of such information to the government implicates a range of weighty

5  constitutional and policy interests." Dkt 1 at ¶ 5. Petitioners conclude that "the public and

6  press have a keen interest in understanding the government's basis for seeking an AWA

7  order directing Sabre to provide it with contemporaneous travel information about a

8  targeted individual, as well as the district court's basis for issuing such an order." Dkt 1 at

9  ¶ 5.

10  As additionally noted by petitioners, the public has an interest in understanding

11  judicial reasoning and authorization of criminal investigations. Dkt 1 at ¶ 3. AWA

12  proceedings, which provide an entity compelled to provide technical assistance only

13  limited opportunity to object to the order sought and might not later be suppressed by a

14  defendant (see United States v. Baker, 868 F.3d 960, 969-70 & n.4 (11th Cir. 2010)), are

15  distinct from warrant proceedings, where a post-execution suppression hearing provides

16  an opportunity for public access and more thorough opposition. Some transparency is

17  thus necessary to ensure that AWA proceedings are not forever sealed off from public

18  review.

19  As a practical solution, petitioners request the court to order redaction and release,

20  even if the court does not grant unsealing of all materials at issue. Petitioners specifically

21  seek disclosure of investigatory techniques, as the sealing of all technical assistance

22  applications and AWA orders would transform such judicial decisions into a secret body

23  of law. Petitioners charge that precluding all access to AWA proceedings is inconsistent

24  with the practice of federal courts, citing to a recent amicus curiae brief from former

25  magistrate judges explaining that judges routinely "publish[] their reasoning when

26  answering novel questions regarding surveillance requests . . . while simultaneously

27  accommodating compelling governmental interests" by using tools like redaction. Brief of

28  Former United States Magistrate Judges as Amici Curiae in Support of Petitioner at 4,

1  American Civil Liberties Union v. United States, No. 20-1499 (U.S. May 27, 2021).

2  The government protests against redaction, contending that redaction would still

3  make it possible to infer information about the underlying case(s) that would potentially

4  frustrate the investigations, and it would still make it possible to infer non-public

5  information about law enforcement sources and methods.  Redaction that would make

6  public any part of law enforcement's technique is thus infeasible according to the

7  government.

8  As described above, the court concludes that the government's interests in

9  preserving the confidentiality of its materials related to an *ongoing* criminal investigation

10  outweigh both presumptions of public access.  However, a different court may come to a

11  different conclusion in a post-investigation context.

12  Petitioners currently have no access to the sealed criminal docket in this case, and

13  they have no way of knowing when the investigation concludes so that they may again

14  apply for unsealing.  The government is uniquely positioned to know the status of the

15  investigation, and it is the party seeking an exemption to the presumptions of access.  At

16  the hearing, petitioners proposed that the court issue a "sunshine date," frequently

17  understood to be a date upon which sealed documents would be made public absent

18  timely renewal of a court's sealing order.  A sunshine date is practically unworkable in

19  this case given the status of the government's investigation.  Instead, the court **ORDERS**

20  the government to give notice when its investigation has closed or has become public.

21  Petitioners may file a new application to unseal court records upon the government's

22  certification that the investigation is finally closed.  Such application should be filed as a

23  separate case and need not be assigned to the undersigned.

24  To ensure some ongoing accountability, the government must annually file on the

25  public docket in this matter a certification that both (1) the investigation remains ongoing

26  and (2) the underlying materials remain sealed.  This certification should not itself include

27  any confidential information or even any legal argument.  The first certification is due on

28  July 1, 2022, and any subsequent certifications are due on the first business day in July

United States District Court
Northern District of California

12

1 every year until the investigation is closed.  The court will take no further action in this

2 case unless specifically requested by one or both of the parties.

3 **IV.      Petitioner's motion to unseal government's ex parte statement of facts**

4 As noted by the magistrate judge, "the concerns regarding potential compromise

5 of an ongoing investigation, as detailed above, are sufficient grounds to deny Petitioners'

6 Motion to Unseal the Government's Statement of Facts."  Dkt. 17 at 22.  The court agrees

7 and finds that the government has a compelling interest in maintaining the confidentiality

8 of its ex parte statement of facts.  Thus, the court **DENIES** the petitioners' request to

9 unseal the fact supplement.

10 **V.       Sealing the unsealed S.D. Cal. Application**

11 The government requests that the court strike the S.D. Cal. Application, Exhibit 1

12 to the petitioners' original petition.  This request was denied in the R&R.  Petitioners

13 correctly note that the government failed to file its own objection to the report, and the

14 government's footnoted attempt to achieve sealing of another court's documents is

15 procedurally defective.  In addition, as petitioners say, the cat's out of the bag: "Secrecy

16 is a one-way street: Once information is published, it cannot be made secret again."

17 Copley Press, 518 F.3d at 1025.  The court therefore **DENIES** the government's request

18 for this court to seal the S.D. Cal. Application.

19 **VI.      Conclusion**

20 For the reasons set forth above, the motion for de novo determination is

21 **GRANTED**; the objections to the R&R are **OVERRULED**; the R&R is fully adopted; and

22 the Petition is **DENIED**.

23 The court hereby **ORDERS** the government to file on the public docket in this case

24 an annual certification that the criminal investigation underlying Petitioners' request

25 remains ongoing, as detailed in section III(C), above.

26 //

27 //

28 //

13

**IT IS SO ORDERED.**

Dated: July 13, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge